(No. 41116.—

ARTHUR C. MAIMON, Appellant, *vs.* EDWARD M. TELMAN *et al.,* Appellees.

*Opinion filed September 24, 1968.*

ASHER, GREENFIELD, GUBBINS AND SEGALL, of Chicago, (IRVING M. GREENFIELD and IRVING D. LEVIN, of counsel,) for appellant.

MARSHALL & MARSHALL, of Chicago, (SHERWIN J. STONE, of counsel,) for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The Appellate Court, First District, affirmed a declaratory judgment of the circuit court of Cook County entered for defendants. (88 Ill. App. 2d 387.) We granted leave to appeal.

Plaintiff, Arthur C. Maimon, a physician and surgeon in Rockford, was a brother-in-law of the defendant, Edward M. Telman, of Skokie, who was married to Maimon's sister. Various loans had been made by Maimon to Telman since 1956. Early in 1959 Telman planned with others to organize a motor vehicle leasing corporation. He approached Maimon asking him if he wished to participate to the extent of one half of the shares to be acquired by Telman. The corporation, Advance Leasing Company, was organized in February, 1959, and a certificate for 40 shares, representing twenty-five percent of the issued shares, was placed in Telman's name. Maimon delivered $6,250 to Telman, $3,750 of which was used to pay for one half of the 40 shares and the remaining $2,500 was loaned to the corporation. Apparently Telman and the other stockholders loaned similar amounts to Advance to get it started. No contract or other written evidence of the transaction was executed at that time.

In September, 1959, Maimon asked for a letter evidencing his interest in the stock. Telman gave him a brief letter dated September 28, 1959, confirming that "50% of Mr. Telman's stock in Advance Auto Leasing Company is the property of Dr. Maimon, all gains, losses are also Dr. Maimon's", and that "The stock shall be voted with Mr. Telman's as an entity." Maimon was not satisfied with the letter and Telman suggested that he have an agreement prepared by Sherwin J. Stone, who, representing both parties, drew an agreement to replace the letter. It was entitled "Agreement for Joint Venture", and although it was not prepared and executed until December, 1960, it was antedated to February 18, 1959. The agreement is set out in full in the appellate court's opinion and need not be repeated at length. It provided for $3,750 from each to pay the $7,500 subscription for 40 shares, that in the event of death of either their respective estates would succeed to their rights, that it did not create a partnership, that it was

not to include other transactions between the parties, and it recited "Telman hereby covenants and agrees that notwithstanding the fact that the shares of stock shall be issued solely in his name, he shall hold said shares and all rights or interests emanating therefrom in trust for the benefit of the parties hereto." The agreement is deficient in several important respects, one of which is that there is no termination date.

Maimon made a written demand for a certificate representing his one half of the forty shares issued to Telman, which was refused. Maimon argues that in the absence of a termination date, the agreement is either void or may be terminated at will by either party. Telman contends, and the trial court so construed the agreement, that it remains in effect until the happening of "future events referred to in the contract, namely (a) the sale of the shares of stock constituting the subject matter of the joint venture; or (b) the redemption of said shares by the corporation and the division of the proceeds between the parties," and the appellate court agreed with this conclusion. Thus, the result is that Telman could not only hold the stock during his life-time, but his successors could control it after his death, since his or their consent is necessary to a sale of the stock.

The absence of a termination date in an agreement does not necessarily void the contract. The courts will construe the language to determine the intent of the parties with respect to duration. In *Vogel* v. *Melish*, 31 Ill.2d 620, it was held that there was an implied condition that neither of the parties to the stockholders agreement was required to accept performance by strangers and that the agreement terminated upon death of one of the parties. In *Galler* v. *Galler*, 32 Ill.2d 16, again there was no termination date. We there construed the purposes of the agreement to have been carried out and it was held to be terminated upon the death of the survivor of the parties.

The relationship created by the agreement is designated throughout as a joint adventure and both parties refer to it as such in the appellate court briefs. Plaintiff, however, now seems to question the relationship as being a joint adventure. (No additional briefs were filed by either of the parties after the petition for leave to appeal and answer.) We look to substance, not form, and relationships do not depend on nomenclature. An exact definition of a joint adventure is impracticable, but, as pointed out in *Carroll* v. *Caldwell,* 12 Ill.2d 487, the most important element in making the determination is the intent of the parties themselves. We do not hold that the agreement in question conforms in all respects to the requirements of a joint adventure but, since the parties treat it as a joint adventure between them, we will apply the principles, where relevant, applicable to joint adventures.

This court has indicated that joint adventures have, in general, the legal incidents of a partnership. (*Ditis* v. *Ahlvin Construction Company,* 408 Ill. 416, 427; *Harmon* v. *Martin,* 395 Ill. 595.) Under familiar rules of partnership, if no date is specified in the agreement it may be terminated at the will of either partner. (Ill. Rev. Stat. 1965, chap. 106½, par. 31.) Defendant contends that some authorities do not apply the partnership rule to termination and cites *Eagle Picher Co.* v. *Mid-Continent Lead & Zinc Co.* (10th cir.), 209 F.2d 917, as supporting such a view. In that case, although the opinion stated that a joint adventure is generally considered a partnership, the court held that there could be no termination of a joint adventure by unilateral action until its purpose was accomplished. "As a general rule, if no date is fixed by the contract of joint adventure for its termination, the agreement remains in force until its purpose is accomplished, or until such accomplishment has become impracticable." (30 Am. Jur., Joint Adventures, sec. 28.) We think the rule is sound.

The principal purposes of the agreement were: (1) to

purchase 40 shares of stock and (2) to have them registered in Telman's name. Obviously, the first purpose has been accomplished. In order to determine whether the second purpose has been accomplished, we turn to the contract to ascertain the reason for its inclusion. But the reason is not specified, so we apply the partnership rule to the transaction and hold that it was terminable at will by either party.

The judgment of the Appellate Court, First District, is reversed and the cause is remanded to the circuit court of Cook County with directions to proceed consistent with this opinion.

*Reversed and remanded, with directions.*