**MERIDIAN HOMES CORPORATION,**
Plaintiff-Appellee,

v.

**NICHOLAS W. PRASSAS & COMPANY,**
Defendant-Appellant.

No. 81–2639.

United States Court of Appeals,
Seventh Circuit.

Argued March 29, 1982.
Decided Aug. 31, 1982.

Richard J. Brennan, Winston & Strawn, Chicago, Ill., for defendant-appellant.

Stuart Smith, Wexler, Siegel & Shaw, Chicago, Ill., for plaintiff-appellee.

Before PELL, SPRECHER * and CU-DAHY, Circuit Judges.

---

* Circuit Judge Robert A. Sprecher was assigned to the panel to hear oral argument in this case. He had read the briefs prior to oral argument but was unable to be present at the argument and did not participate thereafter in the decision of the case because of failing health and subsequent death on May 15, 1982.

CUDAHY, Circuit Judge.

Defendant-appellant Nicholas W. Prassas & Co. ("Prassas") appeals from a grant of partial summary judgment in favor of plaintiff-appellee Meridian Homes Corporation ("Meridian") on the issue of Meridian's right to terminate a joint venture between the parties relating to the development of property in Romeoville, Illinois. Prassas also appeals from a judgment entered September 21, 1981, mandating partial dissolution of the joint venture and ordering a judicial sale of the improved portion of the property.[1] For the reasons stated below, we reverse and remand.

I.

On April 25, 1961, Prassas (then known as George W. Prassas & Company) entered into a joint venture agreement (the "Agreement") with Alexander Construction Company ("Alexander") for the proposed development, in three approximately equal Project Areas, of acreage in Romeoville, Illinois, then owned by Alexander. At issue in this action is the nine-acre tract referred to in the Agreement as Project No. 1. In essence, the Agreement provided for Prassas to be the developer and Alexander to be the financier for the three Project Areas. Title to the real estate was to be held in a LaSalle National Bank land trust, with the beneficial interest of Prassas to be assigned to Alexander, apparently as security for Alexander's financial advances to the venture.

Financial arrangements regarding the joint venture were relatively straight-forward. After improvement of the property, the net cash flow was to be divided equally between the venturers, with Alexander "to the extent permissible under the Internal Revenue Code, [to] have the benefit of the entire depreciation deduction available to the joint venture" (Agreement ¶ 5). Upon

---

1. In a related appeal, decided July 9, 1982, this court affirmed the denial of a petition by Jerome and Philip Prassas to intervene as defendants in the instant dispute. *Meridian Homes Corp. v. Prassas*, 683 F.2d 201 (7th Cir. 1982).

sale of the real estate, the net proceeds of sale after payment of mortgage and other indebtedness would first be paid to Alexander to the extent of the agreed value of the undeveloped land and all funds advanced by Alexander, with any surplus then to be divided equally between the venturers.

Paragraph 7 of the Agreement gave Alexander an option to acquire Prassas' interest in the joint venture within "ninety days after completion and opening for business of a minimum of 500 front feet of store units constituting the entire planned portion of Project No. 1 ...." That paragraph went on to provide:

> In the event this option is not exercised, the joint venture shall continue and the parties agree that thereafter they shall offer the property for sale and [Prassas] shall be the sole designated agent to offer the property for sale.

Paragraph 8 of the Agreement required that "[i]n the event that the property is sold as vacant, both parties must be in agreement ...."

Under paragraph 4 of the Agreement, the parties further agreed

> that [Prassas] may develop Project No. 1 in separate stages consistent with economic operation and the terms and conditions of this agreement shall apply separately to each stage until the property in Project No. 1 shall have been fully developed.

Aside from the provisions discussed above, the Agreement was silent both as to its duration and as to the procedures for its termination.

Initial development of the property, completed in 1961, involved the construction of a small shopping center comprising approximately 31,000 square feet of store area and a parking lot. A Jewel store occupying 15,000 square feet was the major tenant. No additional development took place until after 1970, when Prassas negotiated a new Jewel lease calling for remodeling of the existing store and construction of an additional 25,000 square feet of store space. Because this proposal would have required Alexander to make an estimated additional

capital contribution of $300,000, Alexander initially objected to the expansion, and proposed that Prassas buy Alexander's interest in the joint venture. Prassas rejected this offer, and Alexander ultimately proceeded with the development, making a somewhat smaller capital contribution. No further development of the property has taken place since completion of this remodeling, nor is any development currently planned.

Because the development of Project No. 1 to date comprises only 456 front feet of store space, the "minimum of 500 front feet," which Paragraph 7 of the Agreement denotes as "the entire planned portion of Project No. 1," and which would trigger Alexander's option to acquire Prassas' interest in the joint venture, has never been reached.

In August 1972, Prassas received a Notice of Assignment stating that Alexander had sold and assigned its entire interest in the Agreement to Allister Construction Company ("Allister"). Without any formal consent being asked by Allister or given by Prassas, Prassas thereafter treated Allister in all respects as its fellow joint venturer.

In February 1978, Prassas was notified that Allister had assigned to plaintiff Meridian all of its interest in the land trust that held title to the Project No. 1 property. Thereafter, Meridian claimed it had succeeded to Allister's rights under the Agreement, and contended that it had the right to terminate the joint venture. Prassas, in a letter dated December 13, 1979, denied that Meridian had such a right. This action, brought by Meridian to dissolve the joint venture agreement, followed on January 2, 1980.

On September 22, 1980, Meridian moved for partial summary judgment, alleging that because the Agreement contained no provision governing the duration of the joint venture, it was, as a matter of law, terminable at the will of either party. In the brief filed in support of its Motion, Meridian also claimed that the joint venture agreement was terminable on the additional ground that its purpose—the construction

of a shopping center on the commercial property in question—had been accomplished. *See* R. 20.

The district court, in an opinion reported at 504 F.Supp. 636 (N.D.Ill.1980), rejected Meridian's contention that under Illinois law a joint venture agreement containing no provision for its duration is terminable at the will of either party. 504 F.Supp. at 642–43. Rather, the court held that, under the Illinois Supreme Court's decision in *Maimon v. Telman*, 40 Ill.2d 535, 240 N.E.2d 652 (1968), joint venture agreements lacking a termination provision, unlike analogous partnership agreements, are terminable only when the purpose of the agreement has been accomplished, or when such accomplishment has become impracticable—determinations which, the court ruled, could not appropriately be made on Meridian's motion for summary judgment. 504 F.Supp. at 643.

The district court went on, however, to interpret Paragraph 4 of the Agreement as creating two separate joint ventures, one relating to the portion of Project No. 1 that had been improved; and the other relating to the remaining, unimproved, property. The court then held that since the purpose of the Agreement had clearly been accomplished with respect to the former, improved, portion of the property, Meridian was entitled to terminate that portion of the joint venture through a court-ordered dissolution and judicial sale. As to the remaining, unimproved, portion of Project No. 1, the court ordered the joint venture continued, pending further hearing on the merits. Pursuant to Federal Rule of Civil Procedure 54(b), the district court designated its judgment of September 21, 1981, ordering dissolution and sale of the improved property, a final judgment for purposes of appeal.[2]

## II.

Under Illinois law, which governs this diversity case, the rights and liabilities of members of a joint venture are generally determined by the same legal principles as govern partnership agreements. *Smith v. Metropolitan Sanitary Dist.*, 77 Ill.2d 313, 318, 33 Ill.Dec. 135, 138, 396 N.E.2d 524, 527 (1979). In *Maimon v. Telman*, 40 Ill.2d 535, 240 N.E.2d 652 (1968), however, the Illinois Supreme Court created an exception to this general parallelism in the area of termination of joint venture agreements. Under well-established Illinois partnership rules, if no termination date is specified in a partnership agreement, the agreement may be terminated at the will of either partner. *Maimon*, 40 Ill.2d at 538, 240 N.E.2d at 655; Ill.Rev.Stat. 1965 ch. 106½, par. 31. In *Maimon*, however, the Illinois Supreme Court, relying on *Eagle-Picher Co. v. Mid-Continent Lead & Zinc Co.*, 209 F.2d 917 (10th Cir. 1954) stated that

> as a general rule, if no date is fixed by the contract of joint adventure for its termination, the agreement remains in force until its purpose is accomplished or until such accomplishment has become impracticable.

240 N.E.2d at 655.

Despite this statement of principle, the *Maimon* court, on the facts before it, applied to a joint venture the *partnership* rule of termination at will because that court found it impossible to determine whether one of the purposes of the joint venture agreement at issue had been accomplished. *See* 240 N.E.2d at 655. Thus, we read *Maimon* as holding (1) that, in general, joint venture agreements which contain no provision regarding duration are terminable only when their purpose has been accomplished, or when such accomplishment has become impracticable; and (2) that where it cannot be determined from the joint venture agreement whether one or more of the venture's purposes have been accomplished, the *partnership* rule of termination at will should be applied.

We agree with the district court that the principles of *Erie v. Thompkins*, 304 U.S. 64,

---

2. The execution and enforcement of this judgment was subsequently stayed by the district court, pending appeal, on December 2, 1981.

58 S.Ct. 817, 82 L.Ed. 1188 (1938), require us to adhere to the holding of the Illinois Supreme Court in *Maimon*, even though that holding has subsequently been disregarded by at least one intermediate Illinois court. *See Polikoff v. Levy*, 132 Ill.App.2d 492, 270 N.E.2d 540 (1st Dist. 1971). *See also State House Inn Corp. v. Polikoff*, 86 Ill.App.2d 97, 101, 230 N.E.2d 283, 285 (1st Dist. 1967) (where no "definite term" of duration stated by co-venturers, unilateral letter of withdrawal will cause dissolution of the joint venture). We also concur in the district court's conclusions that "the 500 front foot provision of Agreement ¶ 7 represents a floor for the concept of 'fully developed' in Paragraph 4, so that it cannot be said that the Agreement's purpose as to *all* of Project No. 1 'is accomplished,'" 504 F.Supp. at 643 (emphasis in original) and that, although a finder of fact at trial might determine that "such accomplishment has become impracticable," it would be improper to do so on Meridian's motion for summary judgment. *Id.* Finally, although the district court did not address this possibility, we believe it would be similarly inappropriate, on summary judgment in this case, to decide whether, because it is impossible to tell from the Agreement if one or more of its purposes have been accomplished, the partnership rule of termination at will should be applied.

### III.

Despite the district court's acknowledgment that Illinois law generally precludes the termination at will of joint ventures of indefinite duration, the court ruled that both parties in the instant case had paid insufficient attention to Paragraph 4 of their Agreement, which the district court found dispositive of the controversy before it. Paragraph 4 provides:

> It is agreed that First Party may develop Project No. 1 in separate stages consistent with economic operation and *the terms and conditions of this agreement shall apply separately to each stage* until the property in Project No. 1 shall have been fully developed.

(emphasis supplied by district court). According to the district court, the above-highlighted language demonstrates the parties' intent (1) to treat each of the two stages of construction to date as a "separate stage" of development, and (2) to treat the *aggregate* of these two stages as a *separate joint venture* for purposes of determining termination rights. Since the court found that the purpose of the Agreement had clearly been accomplished with respect to the fully developed portion of Project No. 1, the court ruled that "*Maimon*, by its terms permits termination of the joint venture between the parties as to *that* portion of the property." 504 F.Supp. at 643 (emphasis in original).

We cannot agree with the district court's interpretation of Paragraph 4 of the joint venture agreement. Initially, we note that since a primary goal of contract interpretation is to give effect to the intention of the parties, *Cedar Park Cemetery Ass'n v. Calumet Park*, 398 Ill. 324, 335, 75 N.E.2d 874, 880 (1947), it is significant that neither party, in any document filed or argument made before the district court, advocated the interpretation of Paragraph 4 eventually adopted by that court. Indeed, both Meridian and Meridian's predecessors uniformly viewed the Agreement as creating only a single joint venture, and claimed that the single venture was terminable at will. *See, e.g.*, Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment, R. 20; Affidavit of Nicholas W. Prassas, ¶ 4, Attached to Defendant's Cross-Motion for Summary Judgment, R. 33. "Where all the parties adopt and act upon a certain construction of a contract, there is no better extrinsic evidence of their intention than the interpretation they themselves place on it." *American National Bank & Trust Co. v. Lembessis*, 116 Ill.App.2d 514, 253 N.E.2d 126, 130 (1969).

In defense of the district court's decision, plaintiff argues that a court should not be prevented from giving a contract its true meaning merely because both parties place an erroneous construction on an unambigu-

ous contract term. *See In re Chicago & E. I. Ry. Co.*, 94 F.2d 296 (7th Cir. 1938). While this principle is unexceptionable in the abstract, it does not apply here. At best, the contract provision relied upon by the district court is ambiguous; when read in conjunction with the remainder of the contract, however, we believe Paragraph 4 strongly supports Prassas' argument that the parties intended, by their Agreement, to develop Project No. 1 as a single joint venture.

It is fundamental, in construing a contract, that the intent of the parties "be determined with reference to the contract as a whole, not merely by reference to particular words or isolated phrases . . . ." *LaThrop v. Bell Federal Savings & Loan*, 68 Ill.2d 375, 381, 12 Ill.Dec. 565, 568, 370 N.E.2d 188, 191 (1977), *cert. denied*, 436 U.S. 925, 98 S.Ct. 2818, 56 L.Ed.2d 768 (1978); *See Martindell v. Lake Shore National Bank*, 15 Ill.2d 272, 283, 154 N.E.2d 683, 689 (1958). An examination of the entire Agreement at issue here discloses numerous indications that the parties intended to treat Project No. 1 as a single joint venture. For example, Paragraph 1 of the Agreement refers to the management obligations of Prassas in "*this* joint venture" (emphasis supplied), while Paragraph 2 states that Meridian "shall furnish the land required for *the* joint venture at a price equivalent to $10,000 per acre . . ." (emphasis supplied). Similarly, Paragraph 7 of the Agreement provides that upon fulfillment of certain conditions, Alexander may acquire the interest of Prassas "in this joint venture," and, in Paragraph 9, the parties agree that at the option of Alexander "the terms and provisions of *this* joint venture may be extended to Projects No. 2 and 3." (emphasis supplied). Such references to a single undertaking comport with the common conception of a joint venture as "an association of two or more persons to carry out a single enterprise for profit." *Ditis v. Ahlvin Construction Co.*, 408 Ill. 416, 426, 97 N.E.2d 244, 249 (1951).[3]

Moreover, Paragraph 4 of the Agreement itself belies the notion that the parties intended to treat each stage of the development of Project 1 as a separate joint venture, terminable upon completion of that particular stage of construction. Although Paragraph 4 does state that the terms and conditions of the Agreement "shall apply separately to each stage" of development, the paragraph concludes with the phrase "*until the property in Project No. 1 shall have been fully developed.*" If, as defendant now argues, Paragraph 4 were designed to create multiple joint ventures, each automatically severable and terminable at will, then inclusion of the above-highlighted language would serve no purpose. As the district court found, the 500 front foot requirement set forth in Paragraph 7 of the Agreement for the exercise of Alexander's option to acquire Prassas' interest in the joint venture "represents a floor for the concept of 'fully developed' in Paragraph 4." 504 F.Supp. at 643. Adoption of the "separate joint venture" construction propounded by the district court would allow Alexander to circumvent this requirement simply by threatening to unilaterally terminate the joint venture immediately upon completion of any particular phase of construction.

The district court's interpretation of the joint venture agreement is also inconsistent with the specific language used in Paragraph 4. That language refers to "each stage" of development. In the instant case, as the district court recognized, there are at least three such stages: the initial construction of the shopping center, the Jewel remodeling and expansion, and any remaining development of the 9-acre tract which comprises Project No. 1. The district court, however, found only *two* separate joint ventures, one consisting of the *aggregate* of the first two stages of development, the

---

**3.** *See also Harmon v. Martin*, 395 Ill. 595, 612, 71 N.E.2d 74, 83 (1947), in which the Illinois Supreme Court stated

A joint adventure is not regarded as identical with a partnership, although, generally speaking, it may be said that practically the only distinction between the two is that the former relates to a single specific enterprise or transaction, while the other to a general business of a particular kind.

other relating to all remaining undeveloped property. That the language of Paragraph 4 says nothing about the propriety of *aggregating* various stages of development to form separate joint ventures casts further doubt on the correctness of the district court's interpretation.

Finally, we disagree with the district court that failing to interpret the "terms and conditions" language of Paragraph 4 as creating separate and individually terminable joint ventures gives that provision "no meaning" and, hence, violates the well-known contract maxim that "a document is to be construed so as to give meaning to each of its provisions" 504 F.Supp. at 643; see *Gross v. University of Chicago*, 14 Ill. App.3d 326, 338, 302 N.E.2d 444, 453 (1973). Rather, it seems plausible to us that the scrutinized language of Paragraph 4 was included in the contract to emphasize the parties' understanding that, although development of Project No. 1 could proceed "in separate stages," the *other* terms and conditions of the joint venture, concerning such things as the collection and disposition of rental payments and the allowance of a depreciation deduction, would apply to each stage of the Project *as that stage was completed*, rather than remaining dormant until full development had been reached. Absent such specific language, the parties may well have feared that Paragraph 5 of the Agreement, which contains many of the "terms and conditions" alluded to, and which is prefaced by the phrase "[w]hen such property has been improved . . ." could be interpreted as inoperative until the entire 9-acre tract had been improved.[4]

## IV.

Like the district court in this case, we recognize the potential unfairness of allowing a non-equity venturer such as Prassas to tie up indefinitely the capital of an equity venturer through dilatory or piecemeal development of a planned project area. In particular, we are aware that by keeping the total front foot development below the 500 foot minimum set forth in Paragraph 7 of the Agreement, Prassas has effectively prevented Meridian from exercising its option to acquire Prassas' interest in the instant joint venture. We believe, however, that Illinois law, by allowing for termination of a joint venture either where achievement of its purpose has become impractical *or* where it is impossible to tell from the agreement whether one or more of its purposes have been accomplished, adequately provides for this contingency. Thus, just as the district court in this case ordered the joint venture continued as to the remaining, undeveloped, property pending further hearing on the impracticability issue, under our interpretation of the Agreement, a similar hearing with respect to the entire joint venture would now appear warranted.

## CONCLUSION

For these reasons, we reverse the district court's grant of partial summary judgment in favor of Meridian, reverse the district court's final judgment of September 21, 1981, ordering partial dissolution of the joint venture and sale of the improved portion of Project No. 1, and remand the case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

4. Paragraph 5 provides in its entirety:

    5. When said property has been improved, the rents to be received therefrom shall be applied to the expense of the operation, repairs, taxes, insurance, interest on mortgage and amortization of mortgage, and any amount remaining shall be divided equally between the parties hereto. The parties agree that Second Party may, to the extent permissible under the Internal Revenue Code, have the benefit of the entire depreciation deduction available to the joint venture.