In re Lee GROFF a/k/a Benny Lee Groff and Gwen Groff a/k/a Doris Gwen Groff d/b/a Groff Cattle Company, Debtors.

AGRI–TECH SERVICES, INC. and Morgan County Feeders, Inc.; Pickering–Groff; Ed Pickering, Plaintiffs–Appellees,

v.

CITIZENS BANK OF CLOVIS, Defendant–Appellant,

Lee Groff, also known as Benny Lee Groff; Gwen Groff, also known as Doris Gwen Groff; Lee Groff Cattle Co.; El Paso National; Paul Sloane; Ersell Sloane; Thomas County Stockyards, Inc.; Wilcox Livestock Auction, Defendants.

No. 87–2143.

United States Court of Appeals, Tenth Circuit.

March 26, 1990.

Lynell G. Skarda, Clovis, N.M. (J. Kerwin Hollowwa of Spann, Latimer & Hollowwa, Albuquerque, N.M., on the briefs), for defendant-appellant The Citizens Bank of Clovis.

Robert H. Jacobvitz of Poole, Tinnin & Martin, Albuquerque, N.M., for plaintiffs-appellees Agri–Tech Services, Inc., and Morgan County Feeders, Inc.

Before HOLLOWAY, Chief Judge, and BARRETT and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Citizens Bank of Clovis (Citizens Bank) appeals adverse rulings in both the bankruptcy and district courts in this priority dispute. Both courts determined that Citizens Bank had no interest in certain cattle held by a joint venture in which Lee Groff, a bankruptcy debtor, participated. The central issue on appeal is whether the rules governing partners' interests in partnership assets also apply to joint ventures. We hold that they do and, therefore, affirm the district court's decision.

To secure a debt of Lee and Gwen Groff, Citizens Bank took a security interest in specified cattle the Groffs owned and all cattle "after acquired." Unbeknownst to Citizens Bank, Lee Groff was about to enter a cattle-feeding venture with Ed Pickering. On several subsequent occasions, Groff and Pickering purchased cattle from Agri–Tech Services, Inc. (Agri–Tech), with Morgan County Feeders, Inc. (Morgan County) providing purchase money financing.[1]

---

**1.** Morgan County took purchase money security interests in the cattle, but at least with respect to some of the cattle it did not perfect its interests as against other creditors by a proper public filing. *See generally* UCC §§ 9–301, 9–302, 9–

312. In view of our disposition of the case, whether Morgan County's interests were properly perfected is not material to Citizens Bank's appeal.

When Lee and Gwen Groff filed a bankruptcy petition, the question arose concerning creditors' rights to the Groff–Pickering cattle. Citizens Bank argued that the cattle came within the after-acquired property clause of their security agreement with the Groffs. The bankruptcy court held that (1) Groff and Pickering were engaged in a joint venture, (2) the cattle were property of the joint venture, (3) in this context, New Mexico partnership law applies to joint ventures, and (4) under New Mexico partnership law, Citizens Bank, as a creditor of the Groffs in their individual capacities only, had no interest in the Groff–Pickering cattle.[2] Consequently, the bankruptcy court ruled that the Groffs' bankruptcy estate did not contain the Groff–Pickering cattle; the estate contained only "the debtors' interest in the Groff–Pickering joint venture as determined under the New Mexico substantive law of partnerships."[3] III R. 637. The district court affirmed. On this appeal, Citizens Bank does not contest the first two issues listed above. Our review of the remaining issues is de novo. *See Bartmann v. Maverick Tube Corp.,* 853 F.2d 1540, 1543 (10th Cir.1988).

### I

Citizens Bank's principal contention on appeal is that in view of the bankruptcy court's finding that Groff and Pickering were engaged in a joint venture, it was inconsistent and erroneous to apply partnership law to the joint venture's property. This argument, however, ignores the essential nature of a joint venture.

The joint venture as a legal organization was unknown to the early common law; it is a creature of the American judiciary, dating from the late nineteenth century.

*Parks v. Riverside Ins. Co. of Am.,* 308 F.2d 175, 177 (10th Cir.1962); 46 Am.Jur.2d *Joint Ventures* § 2, at 23 & n. 11 (1969). Although its history is not entirely clear, apparently the joint venture concept was developed to extend principles of partnership law to organizations that did not meet the technical requirements of a partnership. *See* 1 A. Bromberg & L. Ribstein, *Bromberg and Ribstein on Partnership* § 1.01(b), at 1:5 (1988) [hereinafter *Bromberg and Ribstein on Partnership*]; H. Reuschlein & W. Gregory, *Handbook on the Law of Agency and Partnership* § 266, at 441–42 (1979) [hereinafter *Law of Agency and Partnership*].

Today, the sole characteristic distinguishing a joint venture from a partnership is the joint venture's more limited purpose or scope: a joint venture is usually limited to carrying out a single transaction or a series of related transactions, while a partnership is for the purpose of carrying on a continuing business. 1 *Bromberg and Ribstein on Partnership* § 2.06(a), at 2:42–:43; H. Henn & J. Alexander, *Laws of Corporations and Other Business Enterprises* § 49, at 105–06 (3d ed. 1983) [hereinafter *Laws of Corporations*]; *Law of Agency and Partnership* § 266, at 442–43; *see Quirico v. Lopez,* 106 N.M. 169, 740 P.2d 1153, 1155 (1987) ("the parties entered into a joint venture, a single partnership transaction"); *Hansler v. Bass,* 106 N.M. 382, 743 P.2d 1031, 1036 (Ct.App.) ("a joint venture ... is generally considered to be a partnership for a single transaction"), *cert. denied,* 106 N.M. 375, 743 P.2d 634 (1987).[4] Delineating the activity level beyond which a joint venture becomes a partnership can be a challenging task, *Madison Nat'l Bank v. Newrath,* 261 Md. 321, 275 A.2d 495, 498 (Ct.App.1971); *Law of Agency and Part-*

---

**2.** In view of our disposition of this case, we do not reach the other issue addressed by the bankruptcy and district courts: that the Groff–Pickering venture did not own some of the cattle they held because they failed to reach an agreement with Agri–Tech on material terms of the purchase.

**3.** The bankruptcy and district courts assumed, as do the parties to this appeal, that the substantive law of New Mexico governs this dispute; therefore, we will do the same.

**4.** *Compare* N.M.Stat.Ann. § 54–1–6, UPA § 6 ("partnership is an association of two or more persons to carry on ... a *business* for profit" (emphasis added)) *with Meridian Homes Corp. v. Nicholas W. Prassas & Co.,* 687 F.2d 228, 233 (7th Cir.1982) ("joint venture [is] 'an association of two or more persons to carry out a *single enterprise* for profit'" (emphasis added)) (quoting *Ditis v. Ahlvin Constr. Co.,* 408 Ill. 416, 426, 97 N.E.2d 244, 249 (1951)).

*nership* § 266, at 442, but in most cases this is unnecessary, because "[a]s a general rule the substantive law of partnerships is applicable in determining the rights and liabilities of joint venturers and third parties," *Stone v. First Wyo. Bank N.A.*, 625 F.2d 332, 340 (10th Cir.1980) (applying Wyoming law); *see also Hansler v. Bass*, 743 P.2d at 1036 (applying N.M. Stat.Ann. § 54–1–7, UPA § 7, to joint venture).

As a matter of fact, "the present trend is to include joint ventures as a recognized type of partnership, rather than a distinct but analogous business entity." *Law of Agency and Partnership* § 266, at 446. The Uniform Partnership Act itself applies to "a partnership for a fixed term or particular undertaking." N.M.Stat.Ann. § 54–1–23(A), UPA § 23(1); *see also Brown v. Fairbanks*, 121 Cal.App.2d 432, 263 P.2d 355, 360 (Dist.Ct.App.1953) ("A partnership may be formed for one or two ventures as well as for the conduct of a general and continuous business."). Any departure from partnership law in the context of joint ventures should be justified on the basis of the joint venture's more limited scope. *See Laws of Corporations* § 49, at 107; *see, e.g., Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 687 F.2d 228, 231–32 (7th Cir.1982) (under Illinois law, determining date of termination in absence of agreement differs between partnership and joint venture); *Law of Agency and Partnership* § 266, at 445 (actual and apparent authority of joint venturer may be more limited than that of partner).[5] Keeping this in mind, we examine partnership law governing partners' rights in partnership property.

## II

Before the Uniform Partnership Act, the courts struggled in their attempts to apply traditional concepts of joint ownership to partnership property because none of these approaches were well suited to the partnership's business context. The resulting confusion and inconsistencies were the principal catalysts behind the creation of the Uniform Partnership Act (UPA) in 1914.[6] *See generally* UPA commissioner's prefatory note & § 25 official comment; 1 *Bromberg and Ribstein on Partnership* §§ 3.04(a), 3.05(d)(1).

■ The UPA provides that the partnership owns property as an entity, separate and distinct from the partners. *See* N.M. Stat.Ann. § 54–1–8, UPA § 8. The rights of the partners in specific partnership property is as co-owners, holding as tenants in partnership. *Id.* § 54–1–25(A), UPA § 25(1). But "[a] partner's right in specific partnership property is not assignable except in connection with the assignment of rights of all the partners in the same property," *id.* § 54–1–25(B)(2), UPA § 25(2)(b), and "[a] partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership," *id.* § 54–1–25(B)(3), UPA § 25(2)(c). Individual partners can only assign their residual interests in the entire partnership. This is also the only partnership interest that the partners' individual

---

**5.** One court described the differences between partnership and joint venture law as of a "technical character ... when they do exist." *Madison Nat'l Bank*, 275 A.2d at 499. Even these "technical distinctions" are fading. For example, in *McCulloh v. Doyle*, 40 N.M. 126, 55 P.2d 739, 739–40 (1936), the New Mexico Supreme Court stated that "[i]t is generally held that, where the association as partners is for a single transaction, one partner, at its close, may maintain an action at law against the other for losses without a formal accounting," which the court thought was the only remedy when one partner sues another partner. But the Supreme Court of Hawaii took issue with *McCulloh*, stating that "[i]n reality, however, a partner may sue another partner at law regarding a partnership transaction where an accounting is unnecessary.

Further, where a full accounting is required to properly adjust the accounts between joint venturers, the appropriate remedy is in equity for an accounting." *Lau v. Valu–Bilt Homes, Ltd.*, 59 Haw. 283, 582 P.2d 195, 200 (1978) (citations omitted). As early as 1931, Professor Phillip Mechem stated that "[t]he law of partnership is applied, point for point, to all joint adventure controversies, and identical results are reached, under similar circumstances, no matter whether the association is regarded as a partnership or a joint adventure." Mechem, *The Law of Joint Adventures*, 15 Minn.L.Rev. 644, 666 (1931) (footnote omitted).

**6.** New Mexico adopted the UPA in 1947. N.M. Stat.Ann. ch. 54, art. 1.

**1478**

creditors can reach; only partnership creditors can attach partnership property. *See id.* §§ 54–1–26 to –28, UPA §§ 26–28. On dissolution of the partnership, partnership creditors have priority in the distribution of partnership property. If an individual partner becomes insolvent, that partner's individual creditors have priority over partnership creditors with regard to his separate property. *See id.* §§ 54–1–38(A), –40(H) to –40(I), UPA §§ 38(1), 40(h)–(i). So the UPA treats the partnership and its assets and liabilities as a separate entity, distinct from the assets and liabilities of its owners. This scheme is necessary to prevent disruption of, and facilitate credit for, the partnership business. It is equally necessary in the context of joint ventures.[7]

 In this case, because the Groffs purported to act solely on their own behalf in granting a lien on their cattle to Citizens Bank, they could transfer no interest in the Groff–Pickering cattle.[8] The Groff–Pickering cattle could not enter the Groffs' bankruptcy estate under 11 U.S.C. § 541; only the Groffs' residual interest in the Groff–Pickering joint venture became property of the estate. *See E.A. Martin Mach. Co. v. Williams (In re Newman),* 875 F.2d 668, 671 (8th Cir.1989) (partner-debtor); *Campbell v. Bolen (In re Caudy Custom Builders, Inc.),* 31 B.R. 6, 9 (Bankr.D.S.C.1983) (joint venturer-debtor); 1 *Bromberg and Ribstein on Partnership* § 3.05(d)(4); *cf. Hopkins Ill. Elevator Co. v. Pentell (In re*

*Pentell),* 777 F.2d 1281, 1284–85 (7th Cir. 1985) (limited partner-debtor).

AFFIRMED.

---

7. *See Xanadu of Cocoa Beach, Inc. v. Zetley,* 822 F.2d 982, 986 (11th Cir.1987) (under Florida law, joint venture holds property as entity), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 777, 98 L.Ed.2d 863 (1988); *Century Bank v. Gillespy,* 399 So.2d 1109, 1110 (Fla.Dist.Ct.App.1981) (judgment against individual joint venturer does not support lien against joint venture land); *Madison Nat'l Bank v. Newrath,* 261 Md. 321, 275 A.2d 495, 498–501 (Ct.App.1971) (joint venturer acting in individual capacity cannot grant lien on partnership property); *Masterson v. Valley Nat'l Bank,* 70 Misc.2d 623, 334 N.Y.S.2d 356, 359–60 (Sup.Ct.1972) (same); *Horn's Crane Serv. v. Prior,* 182 Neb. 94, 152 N.W.2d 421, 423–24 (1967) (joint venture creditors have priority in joint venture and individual creditors have priority in joint venturers); *Milberg Factors, Inc. v. Hurwitz–Nordlicht Joint Venture,* 676 S.W.2d 613, 615–16 (Tex.Ct.App.1984) (individual joint ven-

turer cannot grant lien on, and individual creditors cannot attach, joint venture property).

8. Citizens Bank argues that even if the Groffs were without power to grant a lien on the Groff–Pickering cattle, nonetheless, the Groffs had apparent authority to grant the lien, the joint venture ratified the grant, and Citizens Bank took in good faith and for value. The district court held that Citizens Bank waived these issues because it did not present them at trial. Even assuming these issues were not waived, they have no merit. The Groffs did not even purport to act on behalf of the joint venture. Indeed, Citizens Bank admits that at the time it took the security interest, it had no knowledge of the existence of the Groff–Pickering joint venture. Appellant's Brief–in–Chief at 4.