WILLIAM BROWNE, Indiv. and as President of Nationwide Truck Driving School, Inc., Plaintiffs-Appellees, v. WILLIAM E. RITCHEY, Indiv. and as President of Federal Truck Driving School of San Diego, Inc., Defendants-Appellants.

First District (3rd Division)   No. 1—90—0578

Opinion filed August 8, 1990.

Donald G. Mulack and Anthony J. Smith, both of Keck, Mahin & Cate, of Chicago, for appellants.

Nicholas J. Motherway and Robert J. Napleton, both of Motherway & Glenn, P.C., of Chicago, for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, William Browne, individually and as president of Nationwide Truck Driving School, Inc. (hereinafter Nationwide), filed a complaint to enjoin defendant, William Ritchey, individually and as president of Federal Truck Driving School of San Diego, Inc. (hereinafter Federal), from breaching an agreement between the parties. Under the agreement, Nationwide was to operate a truck driving school in Chicago as a branch of Federal and to divide any profits realized equally with Federal in exchange for utilization of Federal's accreditation. Federal held its accreditation from the Accrediting Counsel for Continuing Education and Training (hereinafter ACCET). Plaintiff alleged that defendant had breached the agreement by closing its Chicago branch and removing the accreditation contracted for by Nationwide. After an evidentiary hearing, the trial court granted plaintiff a mandatory preliminary injunction ordering defendant to, *inter alia*, restore to plaintiff's use the accreditation granted defendant by ACCET. Defendant appeals from that order.

Plaintiff testified to the following at the evidentiary hearing. Plaintiff had operated a truck driving school in Chicago for about 14 years as of 1989. From December 1985 to about June 1987, plaintiff's school had been accredited. Accreditation was important to a school because it was a prerequisite for Federal financial aid to its students. Plaintiff approached defendant in the fall of 1987 to explore the idea of a partnership in Chicago. In April 1988, the parties reached an agreement to open a truck driving school in Chicago and to split the profits equally. Additional terms of the parties' agreement were that: the school would be accredited by becoming a branch of Federal; the school would be named "Federal Truck Driving School d/b/a Nationwide Truck Driving School, Inc."; plaintiff was to run the school and pay its expenses; defendant was to receive 100% of the stock of Nationwide; and plaintiff was to have an option to repurchase 49% of the stock after six months. Plaintiff operated the Chicago school under Federal's existing accreditation from May to August 1, 1988. On

August 1, 1988, defendant notified plaintiff that he was closing Federal's Chicago branch and that the school could no longer use Federal's accreditation. At that time there were approximately 135 students with unfulfilled contracts to attend the school. Plaintiff believed that if the Chicago school did not fulfill its obligation to train these students it would risk losing its license from the Illinois Secretary of State. It would also risk being unable to obtain accreditation from ACCET on its own. Defendant did not receive Nationwide's stock because he never asked for it and plaintiff was "holding it in abeyance." Plaintiff's agreement with defendant did not depend on their execution of a written agreement, prepared by plaintiff's attorney, containing the terms to which they had otherwise agreed. If denied the use of Federal's accreditation, it would take the Chicago school about a year to obtain its own accreditation, which would not be in sufficient time to allow plaintiff to fulfill its student contracts.

On cross-examination, plaintiff testified as follows. Defendant had asked for Nationwide's stock on one occasion but plaintiff did not tender it to him at that time. It was not part of the parties' agreement that independent accreditation would be sought for Nationwide separate and apart from Federal's accreditation for its Chicago branch. Paragraph 6 of the written agreement, which the parties had included in their oral agreement, had nothing to do with obtaining that independent accreditation. Plaintiff never intended to obtain such accreditation. Nor did plaintiff want to run the school separately from Federal.

Defendant, called as a witness by plaintiff, testified as follows. He and plaintiff reached an oral agreement to operate a school in Chicago, the terms of which were the same as those contained in the unexecuted written agreement drafted by plaintiff's attorney. Although he never gained actual possession of Nationwide's stock, defendant considered himself the owner of the Chicago school. Defendant's failure to gain possession of the stock had nothing to do with his decision to close the Chicago school. On cross-examination, defendant testified that he did not execute the written agreement because he never received the Nationwide stock.

On his own behalf, defendant testified as follows. The oral agreement that he had with plaintiff was that they would operate a branch of Federal in Chicago and seek independent accreditation for Nationwide. Because, under Federal regulations, an accredited school cannot loan its accreditation to a nonaccredited school and in order to protect Federal's accreditation, defendant made sure that the Chicago school was accredited as a branch of Federal. In order to apply for and ob-

tain independent accreditation for Nationwide, pursuant to the agreement with plaintiff, defendant was required by ACCET to own at least 51% of Nationwide's stock. Defendant never received the Nationwide stock. Paragraph 6 of the unexecuted written agreement provided, with respect to the independent accreditation that defendant was to obtain for Nationwide, that Nationwide's stock was to be sold to Federal. Plaintiff's failure to tender the Nationwide stock to defendant made it impossible for him to seek independent accreditation for Nationwide. Defendant did not execute the written agreement because he did not agree with two of its provisions. Defendant treated plaintiff as an employee upon plaintiff's failure to transfer the Nationwide stock to him and defendant's failure to sign the written agreement. Neither an applicant for enrollment in a Federal school nor Federal is bound if the applicant does not pay any tuition.

In granting plaintiff a preliminary injunction, the trial court found that the parties entered into an oral agreement whereby plaintiff was to be the manager of a Chicago branch of Federal. It further found that, despite plaintiff's failure to tender the Nationwide stock to defendant, the parties operated as partners for nine months. The trial court further concluded that the oral agreement was a legally enforceable contract because there was mutual assent to it and that irreparable injury would result, without the injunction, because refusing accreditation "destroys the school."

OPINION

■ Preliminarily we must note that, in order to obtain preliminary injunctive relief, a plaintiff must show, by a preponderance of the evidence, that: (1) he was a clearly ascertainable right in need of protection; (2) he will suffer irreparable harm without the relief requested; (3) he has no adequate remedy at law; and (4) there is a likelihood of success on the merits. (*Service Systems Corp. v. Van Bortel* (1988), 174 Ill. App. 3d 412, 528 N.E.2d 378.) On appeal, defendant relies upon several grounds to argue that the trial court erred in entering the preliminary injunction for plaintiff. In view of our conclusion that plaintiff lacks a clearly ascertainable right entitled to protection, we need only address defendant's contention that his partnership with plaintiff was a partnership at will and thus terminable at any time.

■ With respect to their duration, partnerships are formed either for a fixed or specified term or without reference to any term. Partnerships formed without reference to any term are partnerships at will. (59A Am. Jur. 2d *Partnership* §§87, 89, (1987).) Such partner-

ships are subject to dissolution at any time by the express will of any partner. (*Maimon v. Telman* (1968), 40 Ill. 2d 535, 538, 240 N.E.2d 652; *Blake v. Sweeting* (1887), 121 Ill. 67, 70, 12 N.E.2d 67; *Sjo v. Cooper* (1975), 29 Ill. App. 3d 1016, 1017, 331 N.E.2d 206; *Salter v. Condon* (1925), 236 Ill. App. 17, 25; Ill. Rev. Stat. 1987, ch. 106½, par. 31(1)(b); 59A Am. Jur. 2d *Partnership* §§89, 818 (1987).) All that the dissolving partner need do is give notice of his intent to dissolve the partnership to his co-partners. (*Blake*, 121 Ill. 67, 12 N.E.2d 67; *Sjo*, 29 Ill. App. 3d 1016, 331 N.E.2d 206; *Salter*, 236 Ill. App. 17; 59A Am. Jur. 2d *Partnership* §820 (1987).) There is a distinction between the power and right to dissolve a partnership. However, as to partnerships at will, a dissolution at the election of one of the partners is not a breach of contract and the dissolving partner incurs no liability regardless of his motive or any injury to his co-partners "who neglected to protect themselves by an agreement to continue for a definite term." 59A Am. Jur. 2d *Partnership* §819, at 641 (1987), citing, *inter alia*, *Thanos v. Thanos* (1924), 313 Ill. 499, 145 N.E.2d 250.[1]

The record in this case reveals that the oral partnership agreement between the parties did not include any agreement as to the duration of their partnership. Moreover, plaintiff does not so allege on appeal. Therefore, the agreement and the parties' rights thereunder were governed by the foregoing rules. Defendant had the right to dissolve his partnership at will with plaintiff at any time as long as he gave notice of his intent to do so. Defendant's telegram to plaintiff on August 1, 1989, stating that he was closing the Chicago branch of Federal satisfied his notice obligation. As defendant acted within his rights under the parties' agreement and partnership law in terminating his relationship with plaintiff, the grant of a preliminary injunction requiring him to continue in that relationship was an abuse of discretion.

Plaintiff concedes the general validity of the foregoing rules of partnership law. However, he argues that defendant cannot evade the specific performance of their oral contract by claiming that the partnership created thereby was terminable at will. Plaintiff so reasons

---

[1]It could be argued, based on defendant's testimony that he and plaintiff agreed to obtain independent accreditation for Nationwide, that the parties formed a partnership for a particular undertaking and that it was thus not terminable at will. (See generally Ill. Rev. Stat. 1987, ch. 106½, par. 31(1)(b).) However, plaintiff's denial of this intent at the evidentiary hearing as a part of their agreement precludes a finding of mutual assent to that term and reliance thereon to reach a conclusion contrary to that which we reach in this case.

based on: (1) the rule that partnerships are contractual relationships to which principles of contract law are fully applicable; (2) the contract law principle that an essential element for the formation of a contract is the parties' mutual assent to its terms; and (3) the rule that the existence of a partnership depends upon the parties' intent. Applying these principles here, plaintiff concludes that the trial court, having found that he and defendant had agreed to operate as partners, properly exercised its equitable powers.

As we understand it, plaintiff's argument is that, having once manifested an intent to form and conduct a partnership with him, defendant could not thereafter withdraw from that partnership as he pleased or chose. The problem with plaintiff's argument, however, is that neither the principles upon which he relies for that conclusion nor the case from which they are cited, *Allen v. Amber Manor Apartments Partnership* (1981), 95 Ill. App. 3d 541, 420 N.E.2d 440, provides any support for it. *Allen* did not involve the question here presented. More importantly, that partnerships are subject to contract law principles is of no avail to plaintiff absent citation to any such principle requiring a conclusion contrary to that which we have reached in this case. That mutual assent is required for the formation of a contract and that the existence of a partnership depends on the parties' intent are not such principles. Rather, those rules have nothing whatsoever to do with a partner's exercise of his right to withdraw from a partnership at will. Plaintiff's arguments are without merit.

For the foregoing reasons, we reverse the order granting a preliminary injunction against defendant.

Reversed.

CERDA, P.J., and WHITE, J., concur.