In the
# United States Court of Appeals
## For the Seventh Circuit

No. 15-2310

AMERICAN ALTERNATIVE INSURANCE CORPORATION,

*Plaintiff-Appellant*,

*v.*

METRO PARAMEDIC SERVICES, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 01235 — **John J. Tharp, Jr.**, *Judge*.

ARGUED DECEMBER 8, 2015 — DECIDED JULY 12, 2016

Before WOOD, *Chief Judge*, and BAUER and WILLIAMS, *Circuit Judges*.

WOOD, *Chief Judge*. This is a dispute over who is entitled to coverage under a liability insurance policy. In the underlying lawsuit, three female employees of Metro Paramedic Services sued Metro Paramedic Services and Antioch Rescue Squad, two Illinois ambulance services, alleging an unrelenting practice of egregious sexual harassment, assault and battery, retaliation for whistleblowing, and failure to supervise. Two of the

employees resolved their claims on the basis of an offer of judgment from Metro and Antioch; the third reached a settlement with both.

American Alternative Insurance Corporation (AAIC) is Antioch's liability insurer. In the underlying suit, AAIC covered Antioch's defense costs and indemnified its offers of judgment and settlement. It insisted, however, that it had no obligation to cover Metro under Antioch's policy. Seeking a declaratory judgment to this effect, it filed this suit. On cross-motions for judgment on the pleadings, the district court found that AAIC owed Metro a duty to defend. We conclude that this is indeed what the policy provides, and so we affirm the district court's judgment.

## I

### A

On July 21, 2011, Shannon Volling, Julie Banser, and April Soulak (collectively, "the plaintiffs") sued Antioch and Metro in the Northern District of Illinois. The three women are former employees of Antioch and Metro. Their complaint alleged that male Antioch and Metro employees engaged in atrocious workplace sexual harassment and other misconduct, and that the entities' supervisors and Antioch's board failed to take corrective action despite the fact that they knew what was going on.

While the plaintiffs' allegations are too numerous to recount in full, a sampling will give their flavor. For instance, Kyle Shouse, the plaintiffs' supervisor, pulled down Banser's pants in front of her co-workers, leaving her naked from the waist down, and then graphically described her private parts to them. He also tried to force Volling and Banser to kiss him,

put his hand down Volling's shirt, slapped and grabbed Volling and Banser's buttocks, exposed himself to the plaintiffs, made explicit, sexually offensive comments about Banser on social media, woke female colleagues up by loudly playing pornography, and downloaded images of bestiality onto co-workers' computers. Meanwhile, Chris McBrady, another employee, groped and made comments about Soulak and Volling's breasts, made repeated sexually explicit advances and remarks to Soulak, threatened Soulak's employment, and called another female colleague a stripper. The plaintiffs recount being subjected to additional harassment and offensive conduct, including *quid pro quo* sexual demands, theft of their undergarments from their overnight bags, display of their lingerie in the station, being sprayed with saline solution so as to expose their breasts, and being subjected to publicly displayed pornography. They add that they witnessed numerous episodes of dangerous and unprofessional conduct, some of a sexual nature, involving patients.

According to the plaintiffs, the Antioch board of directors, which included Chief Wayne Sobczak, Deputy Chief Brian DeKind, President Stephen Smouse, and Treasurer John Edgell, received repeated direct verbal and written complaints regarding these and many similar acts. Far from correcting them, the board ignored the complaints, and many board members directly participated in the harassment and other shockingly unprofessional conduct. Edgell, for instance, shoved ice down the pants and shirts of female co-workers, talked about having patients from a nursing home facility perform sex acts on him, called a female paramedic "Stripperella," commented on female job applicants' breast sizes, placed his crotch in a female colleague's face, and slapped fe-

male co-workers' buttocks. Not to be outdone, Smouse alleg-
edly attempted to have sexual relations with female paramed-
ics in an ambulance while returning from a medical call.
Edgell and Smouse were both intoxicated at the station while
on duty. DeKind insisted that a paramedic complete paper-
work for a patient with whom the paramedic had had no con-
tact.

Critically for this insurance dispute, the plaintiffs alleged
that Antioch and Metro were a partnership or joint venture.
Their complaint asserted that the two entities were jointly
staffed and operated, Metro used Antioch ambulances, and
employees of both entities used Antioch uniforms and gear.
As we noted earlier, all aspects of the underlying suit have
been resolved by settlements; only the collateral insurance
dispute remains.

B

Antioch held a liability insurance policy with AAIC that
was effective from the time of the alleged events through De-
cember 31, 2011. (While Antioch's policy with AAIC consisted
of several forms, for simplicity's sake we refer to it simply as
"the policy.") The policy states that "the words 'you' and
'your' refer to the Named Insured shown in the Declarations,
and any other person or organization qualifying as a Named
Insured under this coverage part." It further notes that "[t]he
word 'insured' means any person or organization qualifying
as such under" the sections entitled "WHO IS AN
INSURED." In those sections, the policy states, "If you are …
a partnership or joint venture, you are an insured. Your mem-
bers and your partners are also insureds but only within the
course and scope of your operations."

Elsewhere, the policy states that AAIC "will pay those sums that the insured becomes legally obligated to pay as monetary damages arising out of an 'employment practices' offense, … or other 'wrongful act' to which this insurance applies." It defines an "employment practices" offense as "an actual or alleged improper employment related practice, policy, act or omission involving an actual, prospective, or former volunteer or employee," including wrongful discipline, retaliation, failure to adopt adequate workplace policies, sexual harassment, and other conduct. It defines a "wrongful act" as "any actual or alleged error, act, omission, misstatement, misleading statement, neglect or breaches of duty committed by you or on behalf of you in the performance of your operations, including misfeasance, malfeasance, or nonfeasance in the discharge of duties, individually or collectively that results directly but unexpectedly and unintentionally in damages to others."

Finally, the policy excludes "sexual abuse" from coverage. The policy defines "sexual abuse" as "sexual conduct … which causes injury," including "sexual molestation, sexual assault, sexual exploitation or sexual injury," but not "sexual harassment." Sexual harassment is defined as "any actual, attempted, or alleged unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature … which causes injury."

C

AAIC covered Antioch's defense costs and indemnified its settlements with the plaintiffs in the underlying action. It drew the line with Metro, however, which it refused to defend or indemnify. On February 19, 2014, AAIC filed this declaratory judgment action against Metro, seeking confirmation

that it was not obliged under the policy to defend or indemnify Metro. Metro filed an answer and counterclaim seeking the opposite declaration on March 28, 2014.

Metro and AAIC's arguments centered on whether Metro was in a "joint venture or partnership" with Antioch, and therefore a "named insured" under Antioch's policy with AAIC. In the alternative, Metro argued that it was an "additional insured" under the policy. AAIC countered that the acts alleged in the underlying complaint were within the policy's "sexual abuse" exclusion and therefore not covered. On cross-motions for judgment on the pleadings, see FED. R. CIV. P. 12(c), the district court held that AAIC had a duty to defend Metro and granted Metro judgment on its duty-to-defend claims. Because Metro had not moved for judgment on its failure-to-indemnify claims and judgment on the pleadings was not proper for the resolution of that issue, the district court reserved it. The district court denied AAIC's motion to reconsider.

Before the court took up the question of summary judgment, AAIC and Metro stipulated that AAIC would pay Metro's duty-to-defend and duty-to-indemnify claims if the district court's judgment on the pleadings were upheld. The district court then granted summary judgment to Metro on all counts, and AAIC appealed.

## II

In diversity cases where neither party raises a conflict of law issue, federal courts apply the law of the state in which they sit. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). The parties agree, and we accept, that Illinois law applies to this

dispute. We review the district court's decision to grant judgment on the pleadings *de novo*. See *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 777 (7th Cir. 2015).

The Illinois Supreme Court "has long held that an insurer's duty to defend an action brought against the insured is 'determined solely by reference to the allegations of the complaint.'" *Pekin Ins. Co. v. Precision Dose, Inc.*, 968 N.E.2d 664, 674 (Ill. App. Ct. 2012) (quoting *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1018 (Ill. 2010)). This is known as the "eight corners" rule: the court "compares the four corners of the underlying complaint with the four corners of the insurance policy to determine whether facts alleged in the underlying complaint fall within or potentially within coverage." *Id.* If they do, the insurer has a duty to defend. *Wilson*, 930 N.E.2d at 1017.

The insurer "may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *Pekin Ins. Co. v. United Contractors Midwest, Inc.*, 997 N.E.2d 235, 241 (Ill. App. Ct. 2013) (quoting *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991)). "The underlying complaint and the policy must be construed in favor of the insured, with all doubts resolved in the insured's favor." *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1136 (Ill. 1999). The primary goal in interpreting an insurance policy "is to give effect to the intent of the parties as expressed in the agreement." *Wilson*, 930 N.E.2d at 1017 (quoting *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72, 75 (Ill. 1997)).

A

In its sections entitled "WHO IS AN INSURED," the policy states, "If you are ... [a] partnership or joint venture, you are an insured. Your members and your partners are also insureds, but only within the course and scope of your operations."

The complaint contains numerous allegations that Antioch and Metro operated as a joint venture. These include allegations that Antioch "jointly operate[d] and staff[ed]" itself with Metro; Metro "operate[d] ambulance and paramedic services jointly with" Antioch; Metro "acted as an agent of [Antioch] and jointly operated" with Antioch; Metro used Antioch's ambulances; Metro hired former Antioch paramedics and emergency medical technicians to staff these joint activities; Metro "did not maintain any separate uniform"; and Metro employees wore "Antioch Rescue Squad" gear. In view of the plain language of the policy and the eight corners rule, it is hard to resist the conclusion that Metro and Antioch were in a joint venture and Metro is covered under the policy as a "named insured."

AAIC nonetheless argues that Metro does not qualify as a "named insured" under the policy because (1) Metro was not listed on the Declarations as required by the policy provisions; (2) Antioch was not organized as a joint venture or partnership; and (3) the contract between Antioch and Metro attached to its motion for judgment on the pleadings disclaimed that they were in a joint partnership.

One fatal problem with AAIC's first point is that, as it concedes, the Declarations issue was not raised before the district court. AAIC attempts to cast this as merely a failure to point

the district court to a relevant provision needed to interpret the contract, rather than waiver. But AAIC's argument that Metro is not a named insured because it did not comply with the Declarations provision has nothing to do with the interpretation of the contract, as a whole or otherwise. It is a separate theory altogether, and is therefore waived. See *James v. Hyatt Regency Chicago*, 707 F.3d 775, 783 (7th Cir. 2013).

AAIC's second argument suffers the same fate. AAIC contends that Metro cannot be a named insured because Antioch was not organized as a joint venture or partnership, but rather is a dissolved company. This argument, too, was not presented to the district court and is therefore waived. Even if it were not waived, it is meritless. Antioch's corporate form does not matter: the duty to defend arises "[i]f the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage." *Wilson*, 930 N.E.2d at 1017. If they do, the duty to defend applies "even if the allegations are groundless, false, or fraudulent, and even if only one of several theories of recovery alleged in the complaint falls within the potential coverage of the policy." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 315 (Ill. 2006). The complaint clearly alleged that Metro participated in a joint venture with Antioch, and that is enough.

AAIC also makes—somewhat cursorily, and in a footnote—a related argument it *did* raise in the district court: that the complaint's allegations were insufficient to make Metro a named insured because the complaint did not plead all the elements of a joint venture under Illinois common law. AAIC provides no evidence, however, that as a substantive matter these criteria were not met, nor did it show that the parties meant to incorporate all of the peculiarities of Illinois law into

the policy. It is more sensible to assume that they used the terms in their generic sense, since neither "partnership" nor "joint venture" is defined.

When not specifically defined, "terms utilized in the policy are accorded their plain and ordinary meaning." *Am. Nat'l Fire Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 796 N.E.2d 1133, 1141 (Ill. 2003). In order to determine the ordinary meaning of "joint venture," Illinois courts look to dictionaries. See *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1005 (Ill. 2010). The NEW OXFORD AMERICAN DICTIONARY 938 (3d ed. 2010) defines a "joint venture" as a "commercial enterprise undertaken jointly by two or more parties that otherwise retain their distinct identities." RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY 713 (1999) defines it as "a business enterprise in which two or more companies enter a temporary partnership." The arrangements described in the complaint easily match these definitions.

Finally, AAIC argues that by attaching two Metro-Antioch service contracts to its counterclaim, Metro disabled itself from alleging that Metro and Antioch participated in a joint venture. In "Article 11: Relationship of the Parties," the contracts expressly disclaim that Metro and Antioch are joint venturers. This statement is not, however, dispositive: Illinois law looks to the substance of the relationship rather than the parties' characterization or intent. See *Maimon v. Telman*, 240 N.E.2d 652, 654 (Ill. 1968).

Moreover, even if the contracts represented an agreement between the parties sufficient to bar suit between *each other* based on a joint venture or partnership, there is no reason why they would bar claims based on such a relationship by third parties such as the plaintiffs. In order to trigger a duty

to defend, "the facts alleged in the underlying complaint" need only "fall within, or potentially within, the policy's coverage." *Wilson*, 930 N.E.2d at 1017. The Metro-Antioch contracts therefore do not preclude the plaintiffs' allegations that Metro and Antioch engaged in a joint venture. It follows that Metro is a named insured under the policy.

AAIC breathlessly predicts that if Metro qualifies as a named insured, then anyone could be a named insured to an AAIC policy so long as a third party alleged that that person was in a joint venture with Antioch. There are two answers to this alarm. The first is that this concern is overblown: it is unclear why a third-party plaintiff would allege that another party is in a joint venture with Antioch unless (as Federal Rule of Civil Procedure 11(b) and its state counterparts require) that plaintiff had a reasonable basis for doing so. This case is not a close one. Metro is a named insured under AAIC's policy with Antioch. Metro is thereby covered by the policy, and AAIC is bound to defend it. As a result, we need not consider its backup argument for coverage: that it is an "additional blanket insured." Second, if AAIC seriously fears this result, it can always re-draft its policies to specify each additional insured (a practice we believe is common).

B

AAIC briefly argues that the policy does not cover the underlying alleged acts, because it is limited to actions that "result[] directly but unexpectedly and unintentionally in damages to others." Because the plaintiffs' complaint states claims for intentional harm, AAIC concludes, it does not fall within the policy's coverage. The most obvious problem with this argument is that the complaint states numerous claims for neg-

ligence and unintentional harm, including negligent supervision and retention, all of which are within the scope of the policy even as AAIC describes it.

Similarly, the policy's sexual-abuse exclusion does not preclude coverage. Sexual abuse includes "sexual molestation, sexual assault, sexual exploitation or sexual injury." Few of the allegations contained in the complaint fit that definition. Moreover, the sexual-abuse exclusion expressly notes that "'Sexual abuse' … does not include 'sexual harassment.'" The vast majority of the complaint's allegations match the policy's definition of "sexual harassment," which includes "any actual, attempted or alleged unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature … which causes injury." The claimants allege sexually degrading and discriminatory comments, a hostile environment, and a custom, practice, and policy of sexual harassment. The policy's sexual-abuse exclusion is not a bar to coverage.

### III

Because Metro is a named insured and the acts alleged are covered by the policy, AAIC had a duty to defend Metro, and the district court's judgment is AFFIRMED.