743 P.2d 1031

**Johann Ulrich HANSLER and Chedly Saheb–Ettaba, Plaintiffs–Appellants,**

v.

**Edward P. BASS and Fine Line, Inc., Defendants–Appellees,**

and

**Edward P. Bass, Cross–Appellant.**

No. 9175.

Court of Appeals of New Mexico.

July 30, 1987.

Certiorari Denied Oct. 1, 1987.

Turner Branch, Margaret Moses Branch, Branch Law Firm, Albuquerque, Michael Schiff, Los Angeles, Cal., George Foster Hannett, Hannett, Hannett & Cornish, P.A., Albuquerque, for plaintiffs-appellants.

William C. Madison, Sarah M. Singleton and Richard L. Puglisi, Montgomery & Andrews, P.A., Albuquerque, for defendant-appellee Fine Line, Inc.

Paul J. Kelly, Jr., Thomas M. Hnasko and Joe W. Wood, Hinkle, Cox, Eaton, Coffield & Hensley, Santa Fe, E. Glen Johnson and Wesley N. Harris, Kelly, Appleman, Hart & Hallman, Fort Worth, Tex., for defendant-appellee and cross-appellant Edward P. Bass.

## OPINION

BIVINS, Judge.

Plaintiffs-appellants, Johann Ulrich Hansler and Chedly Saheb–Ettaba, brought this action to recover damages for personal injuries allegedly sustained by Hansler as a result of a dynamite explosion that occurred on the Synergia Ranch in Santa Fe County on November 4, 1983. They named as defendants four individuals and six corporations. The complaint identifies five theories of liability: premises liability; per se liability based on violations of statutes, ordinances, rules and regulations; res ipsa loquitur; absolute liability based on ultrahazardous activities; and simple negligence.

Service of process against defendants John Allen and Katherine Grey was quashed. The trial court granted summary judgment in favor of defendants Institute of Ecotechnics Corporation and Project Tibet, from which no appeal was taken, and plaintiffs voluntarily dismissed Substantia Planetary Limited. Shortly before trial, summary judgment was granted defendants Edward P. Bass and Fine Line, Inc. (Fine Line). Plaintiffs appeal from those orders, contending that there are genuine issues of material fact that make summary judgment inappropriate. None of the remaining defendants are before the court on appeal.

Bass cross-appealed, claiming attempted substituted service of process on him was legally deficient, or, assuming he had refused service, plaintiffs failed to comply with applicable rules in service of process. Because we hold summary judgment was properly granted, we need not reach the issues regarding service. It follows that if Bass did not himself, or through an agent, commit a tortious act within this state, he would not be *subject* to personal service outside the state. *See* NMSA 1978, § 38–1–16(A)(3); *Valley Wide Health Servs., Inc. v. Graham*, 106 N.M. 71, 738 P.2d 1316 (1987).

On the day of the accident, Hansler, a visitor at the Synergia Ranch, was seriously injured while sports shooting at an area used for that purpose. When he fired into an abandoned refrigerator containing dynamite, it exploded. Hansler seeks damages for the personal injuries suffered. Both he and Saheb–Ettaba, Hansler's partner in a magic act, seek lost earnings and also punitive damages.

While conceding title to Synergia Ranch was held by Marie Harding Allen at the time of the explosion, plaintiffs argue that the "tangled web" of relationships among the several defendants and disputed facts regarding the origin, ownership, possession and storage of the dynamite render summary judgment inappropriate for this case. As to the two defendants before us on appeal, plaintiffs advanced several theories of liability, which we identify and discuss below. At the pretrial conference, they abandoned any claim alleging *alter ego* or "piercing the corporate veil."

Summary judgment may be granted if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Koenig v. Perez*, 104 N.M. 664, 726 P.2d 341 (1986). Movant must first make a prima facie showing of the absence of a genuine issue of a material fact. *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972). Once that is done, the burden shifts to the party opposing summary judgment to show at least a reasonable doubt as to whether a genuine issue for trial exists. *Koenig v. Perez.* In meeting that burden, the opposing party is entitled to have drawn all reasonable inferences from the matters before the trial court. *Goodman v. Brock.* Our task on review is to determine first, whether defendants Bass and Fine Line made a prima facie showing and, if they did, second, whether plaintiffs carried their burden of showing at least a reasonable doubt. We must look to the whole record and take note of any evidence that places a material fact at issue. *Koenig v. Perez.* If the facts are not in dispute, but only their legal effect, then summary judgment may be properly granted. *Id.*

With these standards before us, we examine the showings made by the parties.

## SUMMARY JUDGMENT AWARDED BASS

Bass established that Synopco acted as general contractor to salvage, weatherproof and finish construction on his Cedar Crest home. This project, called Project Touchstone, commenced in 1973 and was completed in August 1974. The construction contract required Bass to pay Synopco for materials "used on site, plus 10%." It specifically excluded from costs any "materials not used directly in the construction of Project Touchstone." Phil Hawes, president of Synopco, supervised the construction, together with other supervisors hired by Synopco. Bass' showing reflects that in August 1974, after termination of the project, Synopco removed all unused materials and supplies from the construction site. Hawes testified that Synopco owned the dynamite and other materials not used or consumed in the construction.

As their theories of liability, plaintiffs argue that: (1) Bass was negligent per se in storing the dynamite; (2) Bass should be held strictly liable for his negligent possession and storage of the dynamite; and (3) Synopco acted on behalf of Bass in the use, possession and storage of the dynamite. The first two theories imply that Bass owned and controlled the dynamite. The third assumes ownership and control by Synopco, but urges vicarious liability on Bass through Synopco.

Bass made a prima facie showing of no genuine issue of material fact both as to his lack of ownership of the dynamite, and of any agency relationship with Synopco. Did plaintiffs overcome this showing? We believe they did not.

Plaintiffs point to numerous inconsistencies in the deposition testimony of several witnesses as to the source of the dynamite and when it had been stored on the ranch. For the purposes of our discussion, we assume a factual issue exists as to whether the dynamite came from Project Touchstone. We also assume Bass knew that dynamite had been used on the project. Those facts, even if established, would not implicate Bass unless he owned the dynamite after completion of the construction, or stored it on the ranch through an agent. A dispute as to facts that are not material does not preclude summary judgment. *Oschwald v. Christie*, 95 N.M. 251, 620 P.2d 1276 (1980).

For the most part, the evidence relied on by plaintiffs to rebut Bass' prima facie showing relates to immaterial facts. The facts that Bass was the architect for the project, that his signature was required on all checks, that he in fact signed one check for dynamite, and that he reviewed and approved all invoices on a weekly basis do not raise a genuine issue as to his ownership of dynamite not consumed on the project. Plaintiffs cite no authority to support their contention that a genuine issue is raised. *In re Adoption of Doe*, 100 N.M. 764, 676 P.2d 1329 (1984) (issues raised that are not supported by cited authority will not be considered). In a cost-plus contract, it would be strange indeed if the owner did not have the right to monitor all purchases.

Plaintiffs also state, "Bass testified that he owned any construction materials and supplies that were not consumed in the project as well as those that were incorporated into the completed project." Our review of the deposition pages cited suggests counsel either misread the testimony or provided an incorrect citation. On the page references given, Bass did not say that he owned materials and supplies not consumed. He said that he might own them before they were consumed, but after they had been used they did not belong to anyone. Bass stated as an example the gas used in plumbing.

Plaintiffs have argued, further, that the specific exclusion of "materials not used directly in the construction of Project Touchstone" did not include any dynamite left over after the blasting. They contend that all dynamite purchased for use in the project was a cost and, whether fully consumed or not, belonged to Bass. We have considered this interpretation, but we conclude that the contracts and testimony make clear that the parties to the contract intended otherwise.

For the foregoing reasons, we are persuaded that there is no genuine issue of

fact as to whether Bass owned the dynamite that exploded. Under the contract between Bass and Synopco, if there was any dynamite left over after blasting at Project Touchstone, Bass established it belonged to Synopco rather than to him. Plaintiffs have not brought forward evidence to show a reasonable doubt as to this fact.

Plaintiffs' claim based on agency or respondeat superior must also fail for two reasons. First, plaintiffs did not overcome the prima facie showing made by Bass that his relationship with Synopco was that of employer and independent contractor, respectively. Second, even if we could assume an agency relationship at the time of construction, there is no evidence that it extended beyond the time the project was completed.

■ The uncontroverted facts establish that Synopco worked on Project Touchstone as an independent contractor. The contract documents, as well as the testimony, demonstrate that Synopco not only provided the labor and materials necessary to complete the job, but also controlled the means. Plaintiffs again only offer as rebuttal evidence the fact that Bass cosigned a check to purchase dynamite, that Synopco's address on the check was the Synergia Ranch, and that Synopco stored materials left over from Project Touchstone at the ranch. The chief consideration that determines if one acts as an independent contractor is whether the employer controls or has the right to control the mode of doing the work. *De Palma v. Weinman*, 15 N.M. 68, 103 P. 782 (1909); *Tafoya v. Casa Vieja, Inc.*, 104 N.M. 775, 727 P.2d 83 (Ct.App.1986). The above facts do not raise a fact question as to control or right of control. Synopco was an independent contractor.

■ It is the general rule that the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants. *Scott v. Murphy Corp.*, 79 N.M. 697, 448 P.2d 803 (1968). There are exceptions to that rule, *Srader v. Pecos Construction Co.*, 71 N.M. 320, 378 P.2d

364 (1963) (holding ordinance requiring floor coverings or guard rails precluded summary judgment); *Pendergrass v. Lovelace*, 57 N.M. 661, 262 P.2d 231 (1953) (employer nonliability held not to apply when work intrinsically or inherently dangerous), but none apply here. The present case deals with dynamite stored and an accident that occurred more than nine years after completion of Project Touchstone. In the absence of a fact question as to control or right of control, the trial court was entitled to conclude that the general rule controls. *See Valdez v. Cillessen & Son, Inc.*, 105 N.M. 575, 734 P.2d 1258 (1987).

Plaintiffs rely on *Liber v. Flor*, 160 Colo. 7, 415 P.2d 332 (1966) (En Banc), a case in which the Colorado Supreme Court held that county commissioners who knew that their road supervisor had purchased dynamite had a duty to exercise the highest degree of care, and if they knew, or should have known, that the dynamite would be stored in a county garage only fifty to seventy feet from a paved highway, they could be held liable. That case is distinguishable because the commissioners had the ongoing duty of supervising their employee. Here, in contrast, while there may have been a nondelegable duty with respect to use of dynamite during the construction phase, *see Srader v. Pecos Construction Co.* and *Pendergrass v. Lovelace*, there was no duty after completing the job.

■ The supreme court in *Romero v. Shelton*, 70 N.M. 425, 429, 374 P.2d 301, 304 (1962), *overruled on other grounds*, *Archuleta v. Pina*, 86 N.M. 94, 519 P.2d 1175 (1974), in quoting from another case, held: " '[I]t has been distinctly held that the doctrine applies in such a case only when the relationship of master and servant existed in respect to the very thing from which the injury arose.' " (Quoting from *Henkelmann v. Metropolitan Life Ins. Co.*, 180 Md. 591, 26 A.2d 418 (1942), emphasis omitted.) Under somewhat related circumstances, this court in *Benham v. All Seasons Child Care, Inc.*, 101 N.M. 636, 686 P.2d 978 (Ct.App.1984), held that the employer was not liable for the automobile accident involving an employee where,

even though the employee had permission to drive the van, she was on a personal mission. The same rationale applies here. Respondeat superior applies only when the employer-employee relationship existed in respect to the very thing from which the injury arose. For a discussion on the distinction between master-servant, principal-agent, see *Romero v. Shelton.* On the showing made by plaintiffs, there is simply insufficient evidence to justify extending the relationship between Bass and Synopco to include storage of any unused dynamite.

We affirm summary judgment for Bass.

## SUMMARY JUDGMENT AWARDED FINE LINE

Plaintiffs claim Fine Line acted as a manager or agent of Allen, the owner of the Synergia Ranch, that it engaged in a joint venture or partnership relationship with Allen involving the ranch, or that it engaged in a joint venture with Synopco for the storage of dynamite. As a result of those relationships, plaintiffs argue that Fine Line is either directly or vicariously liable for damages.

Before the trial court, plaintiffs relied on three specific events to support their claims. One is a check dated February 25, 1980, from Synopco to Fine Line in the amount of $13.97 with a notation "Ranch Rent." The second involves a loan for $70,000 made by Fine Line to Allen, apparently for ranch improvements. The third relates to a joint venture between Fine Line and Synopco for the construction of condominiums on Palace Avenue in Santa Fe, known as Project Llano.

Following the same approach, we hold Fine Line made a prima facie showing of no genuine issue of material fact. At trial, Fine Line's evidence reflected that it had nothing to do with the purchase or storage of dynamite, that it did not own the Synergia Ranch, and that while it had entered in a joint venture agreement with Synopco for construction of Project Llano, no dynamite was used on the construction site.

In their attempt to overcome this prima facie showing, plaintiffs offer first, that the ranch was paid rent for the storage of construction materials from Project Llano.

Since Synopco stored construction materials at the ranch and title to the ranch was held by Allen, we assume plaintiffs are claiming that Fine Line was acting as agent or manager for Allen in receiving a rent check. We also assume that since Synopco stored materials at the ranch sometime in 1974 as a result of either Project Llano or Project Touchstone, plaintiffs are claiming a check written in 1980 for $13.97 must have been for rental for the storage of materials in general, but must have included dynamite as well, and that Fine Line's check for the rental covered the storage of dynamite.

While a party opposing summary judgment is entitled to have reasonable inferences drawn from the facts, *Goodman v. Brock,* to reach plaintiffs' conclusions the trial court would have had to stack one inference upon another inference. This is not permitted. *Lovato v. Plateau, Inc.,* 79 N.M. 428, 444 P.2d 613 (Ct.App.1968) (a "reasonable inference" is a conclusion arrived at by a process of reasoning, and the conclusion must be a rational and logical deduction from the facts admitted or established). Thus, we are unable to conclude that plaintiffs demonstrated the check represented rental for the storage of dynamite.

Even if we accepted plaintiffs' conclusion that the check represents rental for the storage of dynamite, we are at a loss to know how that fact makes Fine Line an agent or manager of the ranch. Plaintiffs do not tell us and cite no authority other than *Liber v. Flor.* Again, that case involved application of the doctrine of respondeat superior where there was clear evidence the county commissioners controlled the road department and knew of the storage of dynamite. There is no evidence that Fine Line had any management or control over the ranch, or that it knew or had reason to know of the storage of dynamite. Acceptance of the check in itself does not establish an agency between Allen and Fine Line. *See McCallister v. Lusk,* 102 N.M. 209, 693 P.2d 575 (1984).

 For plaintiffs to show an agency, there would have to be evidence that Fine Line was authorized to act on behalf of Allen. An agent is one authorized by another to act on his behalf and under his control. *Western Elec. Co. v. New Mexico Bureau of Revenue,* 90 N.M. 164, 561 P.2d 26 (Ct.App.1976). We have been shown no evidence that would support an agency relationship.

Nor does the revolving credit loan made by Fine Line to Allen (to be repaid by a "percentage of business") raise a fact issue as to joint venture or partnership. *Cooper v. Curry,* 92 N.M. 417, 589 P.2d 201 (Ct. App.1978), in discussing the nature of a joint venture, quoted with approval from another case that:

"As a general rule, in order to constitute a joint adventure there must be a community of interest in the performance of a common purpose, a joint proprietary interest in the subject matter, a mutual right to control, a right to share in the profits, and a duty to share in any losses which may be sustained."

*Id.* at 421, 589 P.2d at 205 (quoting from *Underwood v. Holy Name of Jesus Hosp.,* 289 Ala. 216, 219, 266 So.2d 773, 776 (1972), emphasis omitted).

Those elements are missing here. All we know is that Fine Line was to be repaid on its loan by a percentage of the business. NMSA 1978, Section 54-1-7(D) provides in relevant part:

[T]he receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, *but no such inference shall be drawn if such profits were received in payment:*

(1) as a debt by installments or otherwise;

. . . .

(4) as interest on a loan, though the amount of payment vary with the profits of the business.... [Emphasis added.]

Although that provision relates to partnership, we believe it equally applicable to a joint venture, since the latter is generally considered to be a partnership for a single

transaction. *Bard v. Hanson,* 159 Neb. 563, 68 N.W.2d 134 (1955).

Other jurisdictions have reached a similar result that a presumption of partnership disappears when the relationship is one of lender-borrower, with the profit being used to repay money advanced. *See Dills v. Delira Corp.,* 145 Cal.App.2d 124, 302 P.2d 397 (1956); *Koesling v. Basamakis,* 539 P.2d 1043 (Utah 1975).

While no dynamite was used at Project Llano, an inference can be drawn that the dynamite stored by Stephen Storm, who contracted with Synopco to deliver rock to the project, was the same that exploded. Storm operated a quarry and used dynamite in his operation. He testified that he stored dynamite in an abandoned refrigerator on the Synergia Ranch.

The difficulty here in connecting Storm with Fine Line is the same as connecting Bass with Synopco. Storm was engaged by Synopco to deliver rocks. No dynamite was used at Project Llano. Storm used dynamite at his quarry, but he acted as an independent contractor. Plaintiffs do not argue otherwise. Fine Line, as a joint venturer with Synopco, is not liable for the acts of an independent contractor hired by Synopco, and it is not liable nine years after completion of the project. *See* discussion above regarding Bass.

Plaintiffs cite no authority as to why or how Fine Line became a joint venturer with Synopco in the storage of dynamite on the Synergia Ranch. *In re Adoption of Doe.* They offer only that since the Synopco–Fine Line Joint Venture paid the ranch for storage rental in connection with Project Llano, Fine Line knew of the storage of dynamite. Thus, a fact issue is raised as to whether Fine Line, as a member of the joint venture, having known of the storage of dynamite, knew or should have known of the improper storage and failed to exercise due care. For the reasons already stated, this argument fails on the facts as well as the law.

It fails on the facts because there is no way the trial court, or this court, could draw a reasonable inference that the $13.97 check was for the purpose plaintiffs ad-

vance. *Lovato v. Plateau, Inc.* Moreover, under this scenario, plaintiffs have the Project Llano Joint Venture paying one of its members, Fine Line, rental for storage of materials on the Synergia Ranch. This is even more attenuated than the earlier scenario.

It fails on the law because payment of rental by one member of the joint venture would not make the other member liable for acts of an independent contractor's off-site negligence. *See Valdez v. Cillessen & Son, Inc.*

We likewise affirm summary judgment in favor of Fine Line. We do not consider oral argument necessary. *Garcia v. Genuine Parts Co.*, 90 N.M. 124, 560 P.2d 545 (Ct.App.1977).

AFFIRMED. No costs are awarded.

IT IS SO ORDERED.

ALARID and MINZNER, JJ., concur.