This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**MICHAEL CULLEN, CYNTHIA CULLEN,
JOHN POLK, and ARTHA POLK,**

Plaintiffs-Appellants,

v. **NO. 28,557
Consolidated with NO. 28,868**

**DAVID AUBREY and JOYSREE AUBREY,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY
Barbara J. Vigil, District Judge**

Law Office of Jeffrey E. Jones
Jeffrey E. Jones
Santa Fe, NM

for Appellees

David A. Archuleta
Albuquerque, NM

for Appellants

John R. Polk
Albuquerque, NM

Pro Se Appellants

**MEMORANDUM OPINION**

**ROBLES, Judge.**

Michael Cullen, Cynthia Cullen, John Polk, and Artha Polk (Plaintiffs) appeal the district court's granting of summary judgment in favor of David Aubrey and Joysree Aubrey (Defendants) on the claims of trespass, intentional infliction of emotional distress, negligent hiring, and injunctive relief, all under the doctrine of respondeat superior (No. 28,557). On appeal, they allege that (1) the district court erred in finding, as a matter of law, that the poisoning of Plaintiff Cullens' dogs was not causally connected to Anthony Jurca's relationship with Defendants; (2) the district court erred in granting summary judgment on Plaintiffs' negligent hiring claim; and (3) there was a contested issue of fact concerning whether Jurca had apparent authority to act as Defendants' employee in maintaining their property. Seven days after the district court entered its judgment, Defendants filed a cost bill. While the issue of costs was pending, Plaintiffs appealed the order on the motion for summary judgment (No. 28,577). *See generally Kelly Inn No. 102, Inc. v. Kapnison,* 113 N.M. 231, 824 P.2d 1033 (1992), *limited on other grounds by Trujillo v. Hilton of Santa* Fe, 115 N.M. 397, 851 P.2d 1064 (1992). Under the district court's collateral jurisdiction, costs were awarded to Defendants, which Plaintiffs likewise appealed (No. 28,868). We have consolidated both cases in this Opinion and, after discussing

Plaintiffs' first point within the context of employer-employee relations and scope of employment, we conclude that this issue is dispositive on the summary judgment issue and requires affirmance. Accordingly, we address Plaintiffs' second appeal, which we develop later in this Opinion. On the issues of costs, we affirm in part, reverse in part, and remand in part for entry of costs not inconsistent with this Opinion.

**I.    BACKGROUND**

In 2005, Plaintiff Polk and his neighbors sued Defendants for easement rights over the use of a road on Defendants' property. The case was "particularly acrimonious." On June 2, 2006, while the easement suit was pending, Plaintiff Cullens' dog, Goose, died. After conducting an autopsy and forensic testing for poisoning at the Veterinary Diagnostic Service located in the office of the medical examiner in Albuquerque, it was determined that Goose died from consuming elk meat poisoned with "gopher bait." After searching Plaintiffs' property, similar poisoned meat was discovered which, after DNA testing at the Black Hills State University, was determined to be from the same elk with a one in twenty-four billion chance that the sample would match another animal by coincidence. Several days later, Plaintiff Cullens' other dog, Spooner, was also poisoned by elk meat and required veterinary care.

Plaintiffs alleged that Defendants hired Jurca as a handyman, who was responsible for the placement of the poisoned elk meat on Plaintiffs' property. During deposition, Defendants admitted that they made no inquiries into Jurca's background and were unaware that he had previously been convicted of poaching and driving while intoxicated. Instead, Defendants stated that Jurca lived in the area, and they met him while walking the boundaries of their property one day. On occasion, Jurca did odd jobs for Defendants, such as working on a fence, cutting wood, and demolishing an old cabin. By affidavit, Defendants averred that they paid Jurca by the job, but did not provide him with benefits, a uniform, or set hours for him to work. Likewise, they did not direct the method by which he performed the work that he did, nor did they order or suggest that he kill anyone's dogs or "harm anyone or anything." A witness for Plaintiffs, James Franklin House, who also lives in the area, was deposed and provided an affidavit. In his deposition, he stated that he gave Jurca two packages of elk meat just a couple of days before the poisoning. In his affidavit, he stated that Jurca had told him on several occasions that he was employed by Defendants and that he and Defendants had "great plans" for developing Defendants' property.

Plaintiff Polk provided an affidavit in which he stated that he acted as the attorney in the easement lawsuit. He claims that at a hearing in that case, Jurca

5

appeared as a witness, and counsel for Defendants represented that Jurca was Defendants' employee.

On January 17, 2008, Defendants moved for summary judgment, alleging that Jurca was not an employee, nor was he instructed within the scope of his employment to place poison on Plaintiffs' property. Excerpts of depositions and affidavits were attached in support of their motion. Plaintiffs responded in opposition with affidavits and excerpts of depositions, and a hearing was held on the motion on March 3, 2008. At the conclusion of the hearing, the district court found that no material facts were in dispute, and there was no admissible evidence that would support a cause of action against Defendants. Further, the district court found that Jurca was not an employee of Defendants, nor did Defendants have any control over his actions. There was no showing that any wrongdoing of Jurca was "remotely connected to [Defendants'] relationship with him." On March 14, 2008, the district court entered an order dismissing Plaintiffs' suit with prejudice and entering a judgment in favor of Defendants "as a matter of law."

## II.    DISCUSSION

### A.    Summary Judgment

On appeal, summary judgment will be affirmed if there is no evidence creating a reasonable doubt about a genuine issue of material fact, and the moving party is

6

entitled to judgment as a matter of law. *Cain v. Champion Window Co. of Albuquerque, LLC*, 2007-NMCA-085, ¶ 6, 142 N.M. 209, 164 P.3d 90. Reasonable inferences are resolved in favor of the non-moving party, and pleadings, affidavits, depositions, answers to interrogatories, and admissions are viewed in a light most favorable to a trial on the merits. *See Carrillo v. Rostro*, 114 N.M. 607, 615, 845 P.2d 130, 138 (1992). Once the moving party has made a prima facie showing of the absence of a genuine issue of a material fact, the burden shifts to the non-moving party to show a reasonable doubt as to the existence of a genuine issue for a trial on the merits. *Hansler v. Bass*, 106 N.M. 382, 383, 743 P.2d 1031, 1032 (Ct. App. 1987). The non-moving party cannot simply rely on allegations in their complaint or on the argument of counsel to defeat summary judgment. *Ciup v. Chevron U.S.A., Inc.*, 1996-NMSC-062, ¶ 7, 122 N.M. 537, 928 P.2d 263. The standard of review on summary judgment is de novo. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582.

**1. Employer-Employee Relationship**

As a threshold issue, we must review the evidence presented by Defendants and determine if they made a prima facie case. *See Savinsky v. Bromley Group, Ltd.*, 106 N.M. 175, 176, 740 P.2d 1159, 1161 (Ct. App. 1987) (observing that the defendant established a prima facie case for purposes of summary judgment by showing that it

did not have the ability to control the work of the alleged employee). We employ agency analysis to determine if an individual is an independent contractor or an employee. *Celaya v. Hall*, 2004-NMSC-005, ¶ 11, 135 N.M. 115, 85 P.3d 239. Under this analysis, we consider whether the supposed employer has the right to control the supposed employee. *Id*. New Mexico has adopted the Restatement (Second) of Agency § 220 (1958) factors into the calculous of determining the right to control. *Celaya*, 2004-NMSC-005, ¶ 14. This approach considers the degree of control exercised over the details of the work being performed, but it is not exclusive. *Id*. ¶ 15.

> Other considerations include: 1) the type of occupation and whether it is usually performed without supervision; 2) the skill required for the occupation; 3) whether the employer supplies the instrumentalities or tools for the person doing the work; 4) the length of time the person is employed; 5) the method of payment, whether by time or job; 6) whether the work is part of the regular business of the employer; 7) whether the parties intended to create an employment relationship; and 8) whether the principal is engaged in business. Furthermore, a complete analysis may require an assessment not only of the relevant factors enumerated in the Restatement, but of the circumstances unique to the particular case.

*Celaya*, 2004-NMSC-005, ¶ 15 (citation omitted).

The above factors are viewed as a whole with no individual factor receiving greater weight than another, and the presence or absence of a factor is not dispositive of our analysis. *Id*. As we noted above, Defendants supplied depositions and

affidavits in support of their motion that supported a legal conclusion that Jurca was not an employee, but an independent contractor. These undisputed facts demonstrated that Jurca was paid by the job, was doing work unrelated to Defendants' business, and that Defendants never intended to create an employment relationship. As they stated, "[w]e did not engage . . . Jurca as an employee." Additionally, the type of work that Jurca was asked to perform is not the type that is typically done with supervision, nor does it require a high level of skill. "One who employs an independent contractor is not liable to others for the wrongful acts or omissions of the contractor[.]" UJI 13-404 NMRA; *see* UJI 13-406 NMRA ("However, if you find that _____ (*name of employee*) was not the employee of _____ (*name of employer*) . . . then _____ (*name of employer*) is not liable to [the] plaintiff for any such act or omission[.]"). Defendants' motion for summary judgment adequately provided the district court with facts that showed a lack of an employer-employee relationship.

Plaintiffs failed to rebut the prima facie showing of no employer-employee relationship between Defendants and Jurca. As Defendants point out in their answer brief, Plaintiffs never presented any evidence in opposition to summary judgment that showed Jurca was supplied with the instrumentalities of work—whether it be tools or poison—by Defendants. Plaintiffs contend that they provided evidence to create a genuine issue of material fact regarding the relationship between Defendants and

9

Jurca, specifically that Jurca stated that he was an employee of Defendants. An individual is not legally defined as an employee simply because he declares himself as such. *See Celaya*, 2004-NMSC-005, ¶ 14 (concluding that right to control analysis requires an inquiry into "many factors into the calculus of employee versus independent contractor"); Restatement (Second) of Agency: Definition of Servant § 220(2)(a-j) (1958). Similarly, Plaintiffs' affidavit which claims that Defendants' counsel, prior to a hearing on an unrelated case, stated that Jurca was an employee in explanation as to why he was being called as a witness in that case, is insufficient to resist summary judgment. Defendants argue that had such a statement by their other attorney in the unrelated easement case occurred, it would be inadmissible hearsay and irrelevant in this case. However, even assuming that Defendants' other attorney made some type of statement about Jurca being employed by Defendants, and assuming it would be admissible in this case, such facts would not change our analysis. Whether an individual is defined as an employee or an independent contractor presents a mixed question of law and fact. *Cf. State v. Foulenfont*, 119 N.M. 788, 790, 895 P.2d 1329, 1331 (Ct. App. 1995) (holding that whether a fence constituted a structure for purposes of the burglary statute presented a legal question of statutory construction in light of the definition/concept of a fence). We note that there is no claim that any such statement was made in response to formal discovery or on the record in open

court. We therefore reason that an off-the-cuff remark that an individual is an "employee" as opposed to the technically correct definition of an "independent contractor," cannot be expected to implant the qualities that make an employee an employee. As the Restatement (Second) of Agency § 220 factors demonstrate, at best, this evidence lends itself to "whether the parties intended to create an employment relationship." *Celaya*, 2004-NMSC-005, ¶ 15. When viewed through the lens of the totality of the circumstances, and considering that the right to control factors are assigned equal weight, we decline to see this fact as being dispositive of an employer-employee relationship, let alone substantial enough to create a question of fact that rises to the level of a reasonable doubt. *See Spencer v. Health Force, Inc.*, 2005-NMSC-002, ¶ 7, 137 N.M. 64, 107 P.3d 504 ("A movant for summary judgment need only make a prima facie showing that there is no genuine issue of material fact, and that on the undisputed material facts, judgment is appropriate as a matter of law; *the burden then shifts to the opponent to show at least a reasonable doubt, rather than a slight doubt*, as to the existence of a genuine issue of fact." (emphasis added) (internal quotation marks and citation omitted)).

In this case, Defendants' pleadings established that Jurca was not an employee. Plaintiffs failed to present any admissible evidence that would rebut this conclusion.

Thus, the district court's entry of summary judgment in favor of Defendants as to this issue was proper.

**2.      Scope of Employment/Scope of Duties**

Even were we to determine that Jurca was an employee of Defendants, we would still affirm because Plaintiffs did not rebut Defendants' prima facie case showing that Jurca's actions were not sufficiently connected to the work he performed, such that Defendants could be held liable for his actions. Generally, "[l]iability . . . requires some nexus or causal connection between the principal's negligence in selecting or controlling an actor, the actor's employment or work, and the harm suffered by the third party." Restatement (Third) of Agency § 7.05 cmt. c, at 180 (2006).

In regard to the scope of Jurca's work being somehow related to property maintenance, it is an inferential leap to state that Jurca's individual projects involving wood and brush can somehow translate to "[t]aking action against neighborhood dogs [being] within the scope of [his] duties." *See Hansler*, 106 N.M. at 386, 743 P.2d at 1035 ("While a party opposing summary judgment is entitled to have reasonable inferences drawn from the facts to reach [the] plaintiffs' conclusions the trial court would have had to stack one inference upon another inference. This is not permitted." (citation omitted)). "Generally, whether an employee is acting in the course and scope

of employment is a question of fact." *Narney v. Daniels*, 115 N.M. 41, 48, 846 P.2d 347, 354 (Ct. App. 1992). However, "if, from the facts presented, only one reasonable conclusion can be drawn, summary judgment is properly granted." *Id.* at 47, 846 P.2d at 353. The same rules that apply to scope of employment apply to the question of scope of duties. *Medina v. Fuller*, 1999-NMCA-011, ¶ 22, 126 N.M. 460, 971 P.2d 851 (filed 1998). This Court has previously noted that the scope of an individual's duties encompasses what the employee is requested, required, or authorized to perform. *Id.* ¶¶ 9-10. There must be some connection to the employee's actions at the time of the incident and the scope of the employee's duties. *Celaya*, 2004-NMSC-005, ¶ 26. Here, Plaintiffs' mere assertion that Jurca's individual projects on Defendants' property is connected to the poisoning of Plaintiff Cullens' dogs on Plaintiffs' property is insufficient to establish a connection to Jurca's scope of duties.

The evidence that Defendants presented, as outlined above, established as a matter of law that there was no nexus between contracting with Jurca and his independent actions of placing poisoned meat on Plaintiffs' property. *See F & T Co. v. Woods*, 92 N.M. 697, 698, 594 P.2d 745, 746 (1979) (holding that an employer was entitled to a directed verdict on the plaintiff's negligent hiring and retention claims based upon an employee's rape of the plaintiff when the evidence showed that "[a]t

the time of the incident [the employee] was on his own time, was not acting within the scope of his employment, was not in [the] defendant's business vehicle, and had no authority from [the] defendant to enter [the] plaintiff's apartment"); *Cain*, 2007-NMCA-085, ¶ 18 (affirming summary judgment in favor of the defendant on the basis that there was no negligent supervision where there was no nexus between an employee who was on his own time and installing a stove in the plaintiff's home without his employer's knowledge and his regular work which involved installing windows).

Finally, in their brief-in-chief, Plaintiffs assert that Jurca videotaped, at Defendants' request, Plaintiff Polk walking his dogs on Defendants' property. This is not what the record shows. Defendants' deposition states that Jurca was loaned a video camera while he was working on a fence and was asked to videotape to make sure that a road that was being constructed by a contractor did not cross onto someone else's property and to videotape if anyone harassed the contractor while he was building. Jurca was not hired to videotape and, according to the record, only videotaped the fire chief. This evidence does not provide the logical nexus that Jurca was acting within the scope of his duties when poison was placed on Plaintiffs' property.

### 3.      Plaintiffs' Other Claims

As we have already held that Jurca was not an employee, and the evidence presented was insufficient to establish a connection between Jurca's labor and the injury suffered, we conclude that it is unnecessary to address Plaintiffs' negligent hiring or apparent authority claims.  Without a showing of any connection between the work authorized and the harm suffered, Plaintiffs cannot hold Defendants liable for contracting with Jurca, nor can they hold them responsible for this injury.  *See* UJI 13-404 ("An independent contractor is one who agrees to do certain work where the person who engages the contractor may direct the result to be accomplished but does not have the right to control the manner in which the details of the work are to be performed.  *One who employs an independent contractor is not liable to others for the wrongful acts or omissions of the contractor.*"  (emphasis added)); *Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 2007-NMCA-122, ¶ 28, 142 N.M. 583, 168 P.3d 155 ("Negligence in hiring or retention is based on the employer's negligent acts or omissions *in hiring or retaining an employee* when the employer knows or should know, through the exercise of reasonable care, that the employee is incompetent or unfit." (emphasis added)).

15

**B.      Costs**

After an order on summary judgment was entered on March 14, 2008, Defendants filed a costs bill amounting to $2,140.77 which, after the hearing, was granted in full by the district court. On appeal, Plaintiffs allege the district court erred in granting costs with respect to (1) jury fees; (2) copies of exhibits; (3) depositions used in support of summary judgment; (4) depositions not used in the trial or in support of summary judgment; and (5) costs of medical records. We address each issue in turn and develop the facts as needed.

A district court typically has the discretion to award costs to a prevailing party. *Dunleavy v. Miller*, 116 N.M. 353, 362, 862 P.2d 1212, 1221 (1993). "The district court should exercise this discretion sparingly when considering expenses not specifically authorized by statute and precedent." *Id.* at 363, 862 P.2d at 1222. "The right of a prevailing party to recover costs incurred in litigation is by virtue of statutory authority, or by rule of the court as authorized by statute." *Jimenez v. Found. Reserve Ins. Co.*, 107 N.M. 322, 327, 757 P.2d 792, 797 (1988); *see* Rule 1-054(D)(2) NMRA ("Costs generally are recoverable only as allowed by statute, Supreme Court rule and case law."). Costs are typically reviewed under an abuse of discretion standard. *See H-B-S P'ship v. Aircoa Hospitality Servs., Inc.*, 2008-NMCA-013, ¶ 24, 143 N.M. 404, 176 P.3d 1136 (filed 2007). However, the interpretation of a statute

16

or rule of the court that allows a district court discretion is a task we undertake de novo. *See State ex rel. State Eng'r v. Comm'r of Pub. Lands*, 2009-NMCA-004, ¶ 7, 145 N.M. 433, 200 P.3d 86 (filed 2008), *cert. granted*, 2008-NMCERT-011, 145 N.M. 531, 202 P.3d 124.

**1.      Jury Fees**

Jury fees are typically recoverable costs if they are filed pursuant to Rule 1-038 NMRA.  Rule 1-054(D)(1)(c).  Rule 1-038(B)(3) provides:

> If any party initially demands a six-person jury, any other party may demand a twelve-person jury by serving upon the other party or parties a demand therefor in writing after the commencement of the action and not later than ten (10) days after service of a six-person jury demand or after service of the last pleading directed to such issue, whichever is later.

Plaintiffs served a six-person jury demand on Defendants by facsimile on March 15, 2007.  Defendants filed a twelve-person jury demand on April 2, 2007.  Rule 1-006(A) NMRA allows that the first day "of the act" shall not be counted in computation of time, the last day shall, and Saturdays, Sundays, and holidays are not counted if the proscribed time to act is less than eleven days.  Here, Defendants had ten days to respond to Plaintiffs' demand for a six-person jury not including the first day and weekends.  Defendants were simply late.  In their answer brief on costs, Defendants claim that Rule 1-006 allows for an extra three days for service.  However, Rule 1-006(D) states:

17

> *Whenever a party* has the right or *is required to do some act* or take some proceedings within a prescribed period *after the service of a notice* or other paper upon the party and the notice or paper *is served upon the party by mail*, three (3) days shall be added to the prescribed period.

(Emphasis added.)

As stated above, Plaintiffs faxed Defendants notice of their jury demand. Defendants were one day late in responding. As a consequence, Defendants are not entitled to recover the jury fees.

**2.      Copies of Exhibits**

In their cost bill, Defendants requested reimbursement for "[i]n-house copying" of exhibits attached to their motion for summary judgment. The total came to $22.50. While this is a minimal amount considering the briefing and research that the parties have done on this issue, we nonetheless conclude that the district court was incorrect in allowing this cost.

Defendants argue that this cost was proper because Rule 1-054(D)(2)(i) allows for "reasonable expenses involved in the production of exhibits which are admitted into evidence." Specifically, eighteen pages attached to Defendants' motion for summary judgment included excerpts of affidavits and depositions as well as receipts. Defendants made five copies of their motion for summary judgment. Thus, they requested reimbursement for ninety pages of copying. Rule 1-054(D)(3)(a) allows for the photocopying and reproduction of exhibits if they are admitted into evidence. *Id.*

18

(stating that "except as provided in Paragraph D(2)(i) of this rule, photocopying and other reproduction expenses" are not considered recoverable costs).

Plaintiffs argue that the exhibits were not identified or moved into evidence, and photocopies are not recoverable expenses. Defendants' bill of costs clearly identifies that the exhibits are the eighteen pages attached to the motion for summary judgment and, under Rule 1-056(E) NMRA, it was not improper for the district court to consider the supporting documents when deliberating ruling on whether an issue of material fact existed. *See* Rule 1-056(E) ("Supporting and opposing affidavits shall . . . set forth such facts *as would be admissible in evidence*." (emphasis added)). However, the bill of costs requests ninety pages of in-house copying. Defendants state that this is because one copy had to be served upon the court, the clerk, Plaintiffs, and one copy for Defendants' records. All five copies cannot be considered moved into evidence. Only the copy before the court can be considered as such, and Defendants fail to cite any case law that would allow us to consider otherwise. We thus reduce the amount recoverable by Defendants from ninety pages at twenty-five cents per page to eighteen pages at twenty-five cents per page for a total of $4.50.

### 3.   Depositions Used in Support of Summary Judgment

Rule 1-054(D)(2)(e) allows for "the cost of a deposition if any part is used at trial; [or] in successful support or defense of a motion for summary judgment pursuant to Rule 1-056[.]"  Plaintiffs note that the depositions attached by Defendants to the motion for summary judgment were actually depositions taken pursuant to discovery in the earlier easement lawsuit and not this case.  Therefore, according to Plaintiffs, Defendants cannot get reimbursed for the costs because the title of the case is different, and Defendants may be the prevailing party in the other case, and there would be a risk of double recovery.  We make several observations.

First, the order on costs was entered on May 1, 2008.  On May 23, 2008, Rule 1-054 was amended by Supreme Court Order 08-8300-011, which added the category that allowed for deposition costs "when the court determines the deposition was reasonably necessary to the litigation."  Rule 1-054(D)(2)(e)(iii).  While not in effect at the time of this case, we are cognizant that our Supreme Court has recognized rules not in effect at the time of a case when conducting their analysis.  *See Fernandez v. Española Pub. Sch. Dist.*, 2005-NMSC-026, ¶ 11, 138 N.M. 283, 119 P.3d 163 (stating in the context of expert witness fees, "[a]lthough we recognize, as did the Court of Appeals, that this rule does not directly apply to the present matter because [the a]ppellants filed their claim in November of 1998, and this portion of the rule was

amended in 2000, effective February 2001, we conclude that it correctly sets out the law, and we view it as relevant to our interpretation of the statute at issue").

Second, during the hearing on costs, Defendants' counsel told the district court that both parties had agreed to allow questions about both this case and the easement case to occur within the scope of the same depositions for efficiency and economy. Plaintiffs did not dispute this fact. In fact, Plaintiffs attached excerpts from the same depositions to their memorandum in opposition of summary judgment that they now argue are improper for Defendants to recoup costs on.

Finally, we note that Plaintiffs have the burden to establish that the granting of costs were improper. *H-B-S P'ship*, 2008-NMCA-013, ¶ 30 ("We agree that Rule 1-054(D)(2) is ambiguous regarding the meaning of 'use' at trial. However, it is [the plaintiffs], not [the defendants], that ha[ve] the burden in [their] appeal to provide authority for [their] argument."). Additionally, it is speculative whether Defendants will win the easement suit and be awarded costs and that Plaintiffs will not inform the district court that Defendants have already been reimbursed for the depositions. The record demonstrates that there was agreement between the parties to kill two birds with one stone. As a consequence of the depositions being used for both cases, it would be an exercise in futility for this Court to determine which lines of questioning in the depositions were used in support of which cause of action or defense. Under

the circumstances before us, it was not improper for Defendants to be awarded costs for these depositions.

4.     Depositions Not Used and Costs of Obtaining Medical Records

Plaintiffs argue that neither one of these items were used by Defendants in support of summary judgment or trial and that, by definition, these costs are not recoverable.  As we noted above, the new rule would allow for the district court to have discretion in regards to the depositions if it were to conclude that "the deposition was reasonably necessary to the litigation."  Rule 1-054(D)(2)(e)(iii).  A short time ago in *H-B-S Partnership*, this Court stated that it would affirm district courts when awarding unusual items as costs if the district court explained the circumstances justifying the award.  2008-NMCA-013, ¶¶ 24, 28.  In this case, the district court specifically stated, at the end of the costs hearing, that the court would use its discretion in regards to the depositions not used and the costs in obtaining the medical bills.  The district court concluded that both items were reasonably necessary to preparing a defense and were thus appropriate costs for Defendants to recoup.  "Because the district court affirmatively explained its reasons justifying any deviation from Rule 1-054(D)(2), we affirm its allowance of the . . . costs."  *H-B-S P'ship*, 2008-NMCA-013, ¶ 28.  Although a district court should exercise its discretion sparingly when considering expenses not specifically authorized by statute or

precedent, when the district court provides an affirmative and acceptably reasonable explanation for its actions, this Court will not disturb those actions on appeal absent contrary rule, statute, case law, or an abuse of discretion.

**III.    CONCLUSION**

We affirm the district court's entry of summary judgment as to Plaintiffs' claims against Defendants.  As to the cost bill, we remand to the district court to amend the Order regarding costs to eliminate the recovery for jury fees and to reduce the recovery for in-house copying from $22.50 to $4.50 for a total reduction of $118.00.

**IT IS SO ORDERED.**


_____
**ROBERT E. ROBLES, Judge**


**WE CONCUR:**


_____
**CELIA FOY CASTILLO, Judge**


_____
**RODERICK T. KENNEDY, Judge**

23